WILLIAM KNOWLTON et al., Appellants, *v.* THE PROVIDENCE AND NEW YORK STEAMSHIP COMPANY, Respondent.

Under the provisions of the act of congress of 1851 limiting the liability of shipowners (9 Stat. at Large, 635), there is no question of partial or limited liability in case of loss by fire. The first section of said act relieves the owner from all liability where the loss is not caused by his " design or neglect." If it is so caused, his common-law liability remains intact, and he is liable for the whole loss. The provisions of section 3 of said act limiting the liability of the owner to the amount of his interest in the ship and her freight for the voyage, and those of section 4, which, in case of a loss by several freighters exceeding such amount, authorize the taking of proceedings to apportion the sum for which the owner is liable among the parties entitled thereto, have reference solely to losses

occasioned otherwise than by fire happening without "the knowledge or privity" of the owner.

Plaintiffs shipped a quantity of goods on board one of defendant's ships at Providence for New York. After the arrival of the ship at New York it was destroyed by fire, together with its cargo. Plaintiffs brought this action to recover for their loss, alleging it to have been occasioned by "the mere negligence and carelessness of the defendant." Defendant thereafter libeled the ship in the District Court of the U. S., in accordance with said act of congress and the rules of the U. S. Supreme Court, for the purpose of having the value of its interest in the vessel and freight appraised and the appraised value distributed among the freighters, and obtained an injunction in said District Court staying all proceedings in this action. Plaintiffs moved to vacate the injunction, which motion was denied. Defendant thereupon moved for a stay of proceedings in this action, which was granted. *Held,* error; that plaintiffs' claim was not within the provisions of said act, and therefore their action was not affected by the order of the District Court, and that plaintiffs were not estopped from questioning the proceedings in said court by their motion therein to vacate the injunction. Also, *held,* that as the order of the Supreme Court staying the proceedings in effect determined the action and prevented a judgment, it was appealable to this court.

(Argued May 13, 1873; decided May 27, 1873.)

APPEAL from judgment of the General Term of the Superior Court in the city of New York, affirming an order of Special Term staying all proceedings upon the part of the plaintiffs in this action.

This action was brought to recover damages for the loss of plaintiffs' goods destroyed by fire on board of one of defendant's ships, alleged in the complaint to have been occasioned through the "mere negligence and carelessness of the defendant."

Defendant is a corporation running a line of propellers between Providence and New York, of which the steamship "Oceanus," belonging to it, was one. On the 23d of May, 1868, she sailed from Providence with a full and valuable cargo, laden by various shippers, among them the plaintiffs, to be delivered to various consignees in New York; she arrived in New York the next day and made fast to her dock. On the same day a fire broke out in a building on the dock, which quickly spread to the vessel, which was burned to the water's

edge, and her entire cargo destroyed; no freight was saved, and the remains of the steamer left by the fire did not exceed five thousand dollars in value, and she shortly afterward sold for that sum.

This action was commenced in October, 1868; in May, 1872, the defendant filed its libel or petition in admiralty, in the District Court of the United States for the Southern District of New York, in accordance with the Supplementary Rules of Practice in Admiralty, promulgated in January, 1872, by the Supreme Court of the United States, setting forth the foregoing facts, and also alleging that the fire was not caused by design or neglect of the defendant, and the same, and the loss, damage and injury resulting therefrom, was done and incurred without its privity or knowledge; that several shippers of cargo, nevertheless, had sued it for the loss of cargo in the courts of the State of New York; the desire of the defendant, as well to contest its liability at all for the damages resulting from the fire, as also to claim the benefit of limitation of liability provided by the act of March 3d, 1851; the special facts on which it claimed total exemption; an enumeration of the several suits commenced against it in the courts of New York, Massachusetts and Rhode Island, including this action, for amounts in the aggregate greatly exceeding the value of the vessel left by the fire, and that the total value of all the cargo burned exceeded one hundred thousand dollars. The relief prayed for by the petition was that the court would order an appraisement of the value of the petitioner's interest in the vessel and her freight for the voyage, and offering to pay such appraised value into court, or to give stipulations for such value; and that a monition might issue citing all parties interested to present and prove their claims before a commissioner, upon the coming in of whose report, if it should appear that the petitioners are not liable at all, that it may be so finally decreed, and otherwise that the limited liability fund may be divided among the several claimants *pro rata;* and that pending such decree an order might be made restraining all suits at law in the pre-

mises, especially those pending in the Southern District.
The District Court ordered that an appraisement be made by
the clerk, upon proofs to be presented, and after hearing the
petitioners and such of the parties who had sued at law as
should appear, and to that end ordered notice to be given to
the plaintiffs and the other suitors at law of the time and
place of the appraisement; such notice was served upon the
plaintiffs. The vessel was appraised at five thousand dollars.
Thereupon, in compliance with the order of the court, the
petitioners gave stipulations for such value, a monition was
ordered as prayed for, which was duly returned by the mar-
shal served. After such return, and on the 2d day of Sep-
tember, 1872, the District Court made an order staying all
proceedings by the plaintiffs in this and the other actions at
law. The. plaintiffs appeared in the District Court, and
moved to vacate the stay of their proceedings at law, which
was denied by the district judge. They then moved this
cause for trial in the Superior Court, whereupon the defend-
ants filed in that court certified copies of all the proceedings
upon the libel in the admiralty and moved for a stay of pro-
ceedings in this action, which was granted at Special Term.

*Edward D. McCarthy* for the appellants. A State court
is just as competent to decide the question of jurisdiction as
a federal court. (Act of 1793, 2 How. U. S., 583; 4 East,
545; 2 Am. L. Reg., 348; 1 Penn. L. J., 302; 7 Cranch, 279;
4 id., 179; 7 How., 625; 4 Dall., 2; *Campbell's Case*, 1 Abb.
U. S., 185.) In a case of concurrent jurisdiction the court
which first acquired jurisdiction must retain it. (*Taylor* v.
*Carryl*, 20 How. U. S., 583.)

*Joseph H. Choate* for the respondent. The action of the
District Court conforms with the act of March 3, 1851, and
the rules of the U. S. Supreme Court, and is obligatory upon
the plaintiffs. (9 Stat., 635, 636, cited in full; 13 Wal., 105;
Rules 54 to 57 of U. S. Sup. Ct., 13 Wal., XII; *Norwich Co.*
v. *Wright*, id., 104; *The St. Lawrence*, 1 Black., 522; *Brook-*

*man* v. *Hammill*, 43 N. Y., 554; act of 1793, § 7; 1 Stat., 335; Brightley, 793, § 4; act of 1842, § 6; 5 Stat., 517; Brightley, 793, § 6.)   The District Court having entertained jurisdiction by issuing its process, other courts cannot interfere. (*Taylor* v. *Carryl*, 20 How., 583.)   Defendant's libel presented a case within the act and rules, and was sufficient to invoke the jurisdiction of the District Court and to warrant the proceedings that followed. (*Chisholm* v. *North. Tr. Co.*, 61 Barb., 363; *Norwich Tr. Co.* v. *Wright*, 13 Wall., 104 ; *Same* v. *Howard Ins. Co.*, 12 id., 194.)

PECKHAM, J.   Appeal from an order of the General Term of the Superior Court of New York, "that all proceedings in this action on the part of the plaintiffs be and the same are hereby stayed."

This action was to recover against the defendant for the loss of goods it had assumed to transport from Providence to New York.   It had been pending some four years, and had once been tried and was again on the calendar for trial when this order was made.   It appears from the papers in this case, that the defendant's vessel "Oceanus," upon which the goods in question were destroyed, was consumed by fire after her arrival in the port of New York and while fastened to the pier therein, and these goods were then and there burnt with much other property thereon.   In September, 1872, the defendant libeled said vessel in the District Court of the United States for the southern district of New York, and upon complying with the provisions of the act of congress passed March 3d, 1851, entitled " An act to limit the liability of shipowners," and with the rules of the Supreme Court of the United States, made in reference to that act, the District Court issued an order restraining the plaintiffs from further proceeding in the court below in this action.   Upon the pleadings in this case and upon these facts the court below made this order to stay.

It is urged that this order is not appealable.   I think it is. It is an absolute, unconditional stay, without limit, and neces-

sarily prevents the entry of a judgment. This order "in effect determines the action and prevents a judgment from which an appeal might be taken." (Code, § 11.) Such plainly is the purpose of the injunction from the District Court, and this order is made in compliance with that direction. It is said that this order may be modified or reversed upon some application of the plaintiffs for a rehearing or otherwise. The same may be said with the same force of almost any other appealable order. That does not prevent an appeal. It is, then, very clearly appealable.

  Then, was the order legally granted? The action, be it observed, was to recover for these goods on the ground that they were lost through the "mere negligence and carelessness" of the defendant, and it is conceded upon both sides that they were destroyed by fire as before stated. These are the facts. The respondent claims that by the act of congress of 1851, before cited, 9. Statutes at Large, 635, and by the proceedings thereunder in the District Court of the United States, as before stated, the Superior Court of New York has lost jurisdiction or is deprived of authority further to proceed in the trial of this action. Is this true as matter of law? If it be, the order is properly granted.

  By the first section of the act of congress of 1851, before cited, it is enacted that no owner of any ship shall be liable for any loss which may happen to any goods by means of any fire " happening to or on board said ship, * * * unless such fire is caused by the design or neglect of such owner."

  By the third section a very general provision is made against liability of owners for any embezzlement, loss or retention by the master, etc., or any other persons, of any property, goods shipped or put on board such ship, or for any loss, damage or injury by collision, " or for any act, matter or thing, loss, damage or forfeiture done, occasioned or incurred without the privity or knowledge " of such owners, beyond the amount of the interest of such owner in such ship and her freight then pending.

  By the fourth section, if any such loss shall be suffered by

several freighters or owners of goods on the same voyage, and the whole value of the ship and her freight for the voyage shall not be sufficient to make compensation to each of them, they shall receive compensation from the owners of the ship in proportion to their respective losses, and for that purpose the freighters and owners of the property and the owners of the ship, or any of them, may take proceedings in any court for the purpose of apportioning the sum for which the owners of the ship may be liable among the parties entitled thereto, and the owners of the ship may transfer their interest in such ship and freight to a trustee to be appointed by any court of competent jurisdiction, to act as such for the persons entitled thereto, "from and after which transfer all claims and proceedings against the owners shall cease."

The purpose and language of this act would seem to declare that the loss by fire referred to in the first section, not caused by "the design or neglect of the owners," in no contingency could be compensated by any proportion of the value of the ship and freight to be distributed under the subsequent provisions. If the fire and loss occurred without "the design or neglect of the owners" of the ship, then it is declared that they incur no liability whatever. If it occurred by the design or neglect of the owners, then their common-law liability is not affected by the act, and they are personally liable for the whole loss. This would seem to be the fair construction as well as the spirit of the act. Here special provision is made in this first section for this peculiar single loss, and even though the general language of subsequent sections might include the loss in that section provided for, yet where they may be fully applied to other cases of loss, they should be so applied and be satisfied with such application, thus leaving each and all provisions in force. A cardinal rule in the construction of statutes. Thus construed, it provides that where the loss occurred by fire, happening without the design or neglect of the owner, no liability shall attach to the owner. But in other cases than

injury by fire, though the loss does occur without "the knowledge or privity" of the owner, yet he shall be liable to the extent of the value of the ship and freight for the wrong of his servants.

Again, by no code of law, common, civil or maritime, was an owner of a ship limited in his liability where the loss occurred by his own " design or neglect." (*Norwich Co.* v. *Wright*, 13 Wall., 104–116, and authorities.) The provision would have to be very plain and clear that would justify such an interpretation.

By the maritime law the owner was liable only to the extent of the ship, if personally free from blame. (Id.) But by the common as well as by the civil law, the liability of the owner was unlimited, although the loss occurred without his personal wrong. It would be a very great change in the general policy of the law of this country to hold that though an owner of a ship would be subject to no liability in case the loss of the goods thereon occurred by fire, happening without his " design or neglect," yet if it happened by his personal design, or even by his gross neglect, which is held to be equal to fraud, his liability should be limited to the remnants of the vessel unconsumed, and the freight, which might amount to nothing. The act is construed as referring to the value of the ship after the loss, and of the freight then pending, and thus it may be and often must be nominal merely. It is doubtless correctly so construed. (*Norwich Co.* v. *Wright* [*supra.*]) It was held otherwise in Massachusetts, and that the value before the loss was the true amount for which the owners were liable. (*Walker* v. *Boston Ins. Co.*, 14 Pick., 248–303.) There would seem to be no sound reason why goods on ships, lost by fire from the ship owners' design or neglect, should not be fully paid for by such-owners; why ship-owners should designedly burn the goods and then have their own liability limited to a part of the loss; or why such loss should be limited where it has occurred by the owner's personal neglect — even by his gross neglect, which is tantamount to fraud.

It is claimed that this first section is subject to the third, and embraced within its provisions. If it were so intended, it is singular that the difference in the conditions of liability should be so slight. They are, in fact, substantially alike; so near as to evince no difference of purpose. By the first section, the owner is not liable at all unless the fire was caused by owner's "design or neglect." In all other cases not liable personally, but only to the extent of ship and freight, unless loss occurred by owner's "privity or knowledge." Clearly, if the owner burnt his ship and the goods thereon by "design," it would seem to be a loss by his "privity or knowledge." If burnt by his gross "negligence," so gross as to be equal to fraud, it is still negligence, and it is certainly very near to "privity or knowledge." This is an additional reason for inferring that the third section was not intended to include losses by the first. The construction claimed by plaintiffs here is the law of England to-day. The provision in their statute corresponding to our first and third sections as to loss is there the same in each section. By the first, for a loss by fire not caused by the owner's "actual fault or privity," he is not liable "to any extent whatever." In other cases (and the language is as general as here) he is liable only to the extent of his ship and freight, unless loss occurred through his "actual fault or privity." (17 and 18 Vict., chap. 104, §§ 503 and 504; 22 Stat. at Large, p. 330.) Thus there is no limit to the owner's liability anywhere, if the loss occurred by his "actual fault or privity," and no loss "to any extent whatever," where it happened by fire without "actual fault or privity" of the owners. This shows also that the construction we think the sound one is sanctioned in policy by an enlightened nation, having the greatest interest in fostering and protecting her commercial marine. I conclude, therefore, that according to the language and the spirit of the act, the common-law liability of owners of a ship, whereon goods are lost by fire happening by their own "design or neglect," remains without modification.

If, then, this defendant is liable personally for the value

of the goods lost, if liable at all, what have these proceedings in the District Court to do with this case? The action, confessedly, is properly brought in a court having competent authority to determine the controversy, and the law in this court upon the questions involved is the same as it is in the court of the United States. The plaintiffs cannot recover unless they prove to the satisfaction of the court and jury that this fire was caused by the design or neglect of this defendant.

If the construction above given of the statute of 1851 be correct, these plaintiffs have nothing whatever to do with the proceedings in the District Court of the United States, as those proceedings can in no event legitimately affect them. If the plaintiffs succeed in their action, they are entitled to recover their whole loss. If they fail, they are entitled to nothing. In no event are they entitled to any dividend in the value of the ship and freight that may be declared in the proceedings in the District Court. The plaintiffs have not made any such claim in that court, nor by making a motion to dissolve the injunction issued against them, are they estopped from questioning those proceedings.

As the defendants counsel disclaim any reliance upon the injunction issued by the district court, there is no occasion to discuss that subject.

The order appealed from should be reversed, and the motion to stay denied.

All concur.

Order reversed.