JOHN BAIRD, Appellant, *v.* CORNELIUS DALY, Respondent.

Where a bailee of goods, intrusted to him to do work upon them, with the knowledge and privity of the bailor, employs another to aid in doing the work, and through the negligence or unskillfulness of the latter the goods are injured, the owner may maintain an action against him therefor.

The jurisdiction of actions to enforce common-law remedies for breaches of maritime contracts or for maritime torts saved to the State courts by the judiciary act of 1789 (1 U. S. Stat. at Large, 76, § 9) is not limited, restricted or qualified by the act of Congress of 1851 " to limit the liability of shipowners," etc. (9 U. S. Stat. at Large, 635), unless appropriate proceedings are taken under said statute by a party interested to avail himself of the benefit thereof. ·

In such an action the provisions of said act of 1851 can only be interposed to limit the plaintiff's recovery to the modified liability prescribed therein. (§§ 3, 4.)

Plaintiff employed one C., who was owner of a scow, to transport thereon cattle and horses across the St. Lawrence river. C. employed defendant's tug to tow the scow, with the knowledge and assent of plaintiff, he agreeing to pay a portion of the contract price; by the unskillful management of the tug the scow was drawn under water and some of the cattle lost. *Held*, that plaintiff could maintain an action to recover his damages, and that the Supreme Court of this State had jurisdiction of such action.

(Argued January 8, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff upon trial at circuit.

This action was brought·by the plaintiff to recover com-

pensation for loss of, and damage to cattle and horses belonging to him, sustained in consequence of the alleged negligence of the defendant's servants.

Plaintiff employed one Nicholas Cavanaugh to transport the cattle and horses, in his scow, across the St. Lawrence river, from Brockville, Canada, to Morristown, in this State. Cavanaugh made an agreement with the captain of the tug Sarah Daly, owned by the defendant, to tow the scow, with the cattle and horses on board, across the river. The plaintiff agreed with Cavanaugh to contribute one dollar toward the price he was to pay the captain for towage, in addition to the charge of transportation. Evidence was given tending to show that the tug was managed so negligently and carelessly that the scow was pulled and drawn under the water, and that a part of the plaintiff's cattle and his horses, and some cattle belonging to one Glynn, were washed overboard, and lost or damaged.

Upon the plaintiff's proof the defendant moved for a nonsuit, upon the following grounds:

"First. The contract to tow the scow load of cattle, proved, with the defendant, was not made with the plaintiff, nor on his account, nor for his benefit; nor was the plaintiff a party thereto, but was a contract between the defendant and one Nicholas Cavanaugh.

"Second. According to the evidence, the defendant did not owe any contract duty to the plaintiff, or any such duty as would charge him in this action.

"Third. There is no evidence whatever to charge the defendant with any liability to the plaintiff.

"Fourth. If, upon the evidence, the defendant is liable to any one, it is to Nicholas Cavanaugh, and not to the plaintiff.

"Fifth. That the evidence shows that the act complained of, is within the exclusive jurisdiction of the admiralty and maritime jurisdiction of the United States.

"Sixth. That it clearly appears, upon the plaintiff's showing, that the act complained of, occurred upon the St. Lawrence river, without the privity or knowledge of the defend-

ant, who was only the owner of the vessel, through the alleged careless management of which the loss occurred; and that several persons suffered by reason thereof; and there is no proof of the value of the defendant's interest in said vessel or the freight pending; and, therefore, a State court cannot entertain jurisdiction of the cause."

It is then stated in the case that, "The court granted the motion for a nonsuit, upon each and every ground asked by the defendant's counsel." To which ruling and decision and to each and every part thereof the plaintiff excepted.

*Benjamin Vary* for the appellant. The action is not found in privity of contract but on negligence. (*Cook* v. *Prest. N. Y. F. Dock Co.*, 1 Hilt., 436, 443; *City of Buffalo* v. *Holloway*, 7 N. Y., 493; *Guille* v. *Swan*, 19 J. R., 381; *Panton* v. *Holland*, 17 id., 92; *Mayor, etc., of N. Y.* v. *Bailey*, 2 Den., 433; *Denison* v. *Seymour*, 9 Wend., 1; S. & R. on Neg. [2d ed.], § 112; *Mayor* v. *Canuff*, 2 Com., 163–180.) A joint and separate action will lie against principal and agent for injury caused by the negligence of the agent. (*Wright* v. *Wilcox*, 19 Wend., 343; *Suydam* v. *Moore*, 8 Barb., 358; *Montfort* v. *Hughes*, 3 E. D. S., 591; *Phelps* v. *Wait*, 30 N. Y., 78.) If defendant is held to be a sub-contractor of Cavanaugh in a portion of the work, he is liable for negligence. (*Blake* v. *Ferris*, 5 N. Y., 48.) A master who hires out his servant to another person is liable to a stranger for injury caused by the servant's negligence. (S. & R. on Neg. [2d ed.], § 74, and cases cited.) There was sufficient evidence to go to the jury on the question of negligence. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y., 1.) In an action for loss, destruction or damage to goods by negligence and carelessness, the owner can maintain an action against the person committing the injury without privity of contract. (*Green* v. *Clark*, 12 N. Y., 343; *Merrick* v. *Brainard*, 38 Barb., 574.) A party can maintain an action for injury caused by the breach of a contract made for his benefit, though not himself privy to it. (*Robinson* v. *Chamberlain*, 34 N. Y.,

389; *Fult. Ins. Co.* v. *Baldwin*, 37 id., 648.) In all cases of negligence, when the common law is competent to give relief, the State courts have a concurrent jurisdiction with the United States courts. (*N. J. S. Nav. Co.* v. *Mer. Bk.*, 6 How. [U. S.], 39C; *Warring* v. *Clark*, 5 id., 441, 467; *Taylor* v. *Carryl*, 20 id., 583; *U. S.* v. *Beams*, 3 Wheat., 336; *Hine* v. *Trevor*, 4 Wal., 571; *The Moses Taylor*, id., 411; 2 Story on Const., § 1672 and note; Benedict's Admiralty [2d ed.], §§ 201, 205, 206; *In re Steamboat Josephine*, 39 N. Y., 19, 26, 27; *Cheesman* v. *De Wolf*, 2 Sandf., 379; *Hallet* v. *Novion*, 14 J. R., 273; *Percival* v. *Hickey*, 18 id., 257; *Ashbrook* v. *Golden Gate*, 1 Newb., 12, 296; 12 Wheat., 614; 2 Gall., 398; 3 Hay's Ad., 275, 290; Lawrence's Wheaton, 321; Dones' Ab., 6, 351, etc.) The provisions of the act of 1851 (9 U. S. Stat. at Large, 635) can only be interposed to limit the plaintiff's recovery to the modified liability prescribed therein. (§§ 3, 4.) (*Walker* v. *Tr. Co.*, 8 Wall., 150.) That act does not reach the question of jurisdiction. (*Chamberlain* v. *West. Tr. Co.*, 44 N. Y., 305; 11 id., 485; 29 id., 115; 42 id., 212; 44 id., 305; 3 Keyes, 217.)

*E. M. Holbrook* for the respondent. Plaintiff not being a party to the contract, cannot maintain this action. (*Priestley* v. *Fowler*, 3 M. & W., 1; *Tollet* v. *Sherstone*, 5 id., 284; *Quarman* v. *Burnett*, 6 id., 499; *Winterbottom* v. *Wright*, 10 id., 109; *Mayor of Albany* v. *Cunliff*, 2 Com., 165; *Merrick* v. *Brainard*, 38 Barb., 574, 588; affirmed, 34 N. Y., 222; Code, § 3; *Lincoln* v. *Crandall*, 21 Wend., 101; *Harp* v. *Osgood*, 2 Hill, 216; *Newcomb* v. *Clark*, 1 Den., 226; *Erickson* v. *Compton*, 6 How., 471, 474.) The owner of a tug employed in towing boats for hire is not a common carrier, and hence not an insurer. (*Wooden* v. *Austen*, 51 Barb., 1; *Wells* v. *St. Nav. Co.*, 2 Comst., 204.) The owners of such tugs are only liable for gross negligence. (*Wells* v. *St. Nav. Co.*, 2 Comst., 104.) The law presumes that neither defendant nor his servants had been guilty of gross negligence or breach of good faith. (Jones on Bail., 20; *Williams* v.

*East India Co.*, 3 East, 192 ; *Starr* v. *Peck*, 1 Hill, 672, 673 ;
Story on Bail., 232, § 213.) The United States courts have
exclusive jurisdiction and cognizance of the cause of action
at issue in this suit. (U. S. Const., art. 3, §§ 1, 2, 9 ; 1 U.
S. Stat. at Large, 76, 77 ; Du Ponceau on Jur., 21 ; Bene-
dict's Ad., § 19 ; *Waring* v. *Clarke*, 5 How., 441 ; *Cohens* v.
*Virginia*, 6 Wheat., 264 ; *State of R. I.* v. *State of Mass.*,
12 Pet., 723, and cases cited ; *N. J. S. Nav. Co.* v. *Mer. Bk.*,
6 How., 390 ; *U. S.* v. *Bevans*, 3 Wheat., 387 ; *The Moses
Taylor*, 4 Wall., 411 ; *The Hine* v. *Trevor*, id., 555 ; *The
Belfast*, 7 id., 544, 634 ; *The Eagle*, 8 id., 15 ; *The Josephine*,
39 N. Y., 19 ; 1 Kent's Com., 369 ; *Martin* v. *Hunter's
Lessee*, 1 Wheat., 335.) Where there is a maritime lien on a
thing the lien may be enforced by a suit *in rem* in admiralty.
( *U. S.* v. 350 *Chests of Tea*, 12 Wheat., 486 ; Dunlop Ad.
Pr., 69 ; *Cutter* v. *Rae*, 7 How., 729 ; *N. J. S. Nav. Co.* v.
*Mer. Bk.*, 6 id., 392.) Defendant's liability must be deter-
mined under the act of 1851 (9 U. S. Stat. at Large, 635, 636),
and this court has jurisdiction thereof. (*Chisholm* v. *North.
Tr. Co.*, 61 Barb., 392 ; *Brookman Hamil*, 43 N. Y., 554 ;
*Norwich Co.* v. *Wright*, 13 Wall., 104 ; Rules U. S. Sup. Ct.,
54–57 ; *Knowlton* v. *Prov. and N. Y. S. S. Co.*, 53 N. Y.,
76 ; *Moore* v. *Am. Tr. Co.*, 24 How. [U. S.], 1 ; *The Daniel
Ball*, 10 Wall., 557 ; *The Montello*, 11 id., 11.)

LOTT, Ch. C. The different grounds on which the court
below granted the motion for a nonsuit embrace, substan-
tially, these two propositions : 1st. That the plaintiff had no
cause of action against the defendant because there was no
privity of contract between them ; and, 2d. Because the case
was exclusively within the jurisdiction of the United States
courts. Neither of them is well founded.

1st. It is true that the defendant's agreement was made
with Cavanaugh alone, and that it did not obligate him to the
performance of " any contract duty to the plaintiff," as is
stated in one of those grounds ; but that fact did not justify
him, in the execution of that agreement, to do his work so

negligently and carelessly as to injure the person or property
of any other party, not himself in fault, lawfully on board of
Cavanaugh's scow.   His liability to the plaintiff arises from
the negligence and want of care, by his servants, in the man-
agement of the tug while in the prosecution of his business,
and is not based on the breach of any contract made by him
with the plaintiff.   Under the rule or principle applied by
the judge on the trial and affirmed by the General Term, a
hackman, employed by a party to carry him from his resi-
dence to a railroad station, would be absolved from all
responsibility, while in the performance of that obligation,
for injuries caused by or resulting from his negligence and
carelessness in running over a foot passenger crossing the street
with proper care and free from all imputation of negligence.
It is clear that in such a case there would be no privity of
contract between the hackman and the injured party ; but it
could not be claimed that the want of such privity would
exempt the wrong-doer from liability for the wrong done
by him.

2d. Assuming that the plaintiff's cause of action was cog-
nizable in the courts of the United States, their jurisdiction
was not exclusive.   The learned judge, who delivered the
opinion of the General Term of the Supreme Court, held,
and properly, that the case came within the saving clause of
the ninth section of the judiciary act of 1789, passed by Con-
gress (1 U. S. Stat. at Large, 76 and 77) " saving to suitors, in
all cases, the right to a common-law remedy when the com-
mon law is competent to give it ; " and conceded that the
courts of this State had jurisdiction of it, unless the act of
Congress entitled " An act to limit the liability of ship-owners
and for other purposes," passed March 3d, 1851 (9 U. S. Stat.
at Large, 635, 636, and Brightly's Digest, p. 834) is applica-
ble to it.   It is sufficient, in support of such conceded juris-
diction, to cite the case of *Steamboat Company* v. *Chase* (16
Wallace, 522, etc.), decided in December, 1872, without refer-
ring to previous cases to the same effect ; and the following
considerations will show that the act referred to by him does

not prevent, or in any manner limit, restrict or qualify that jurisdiction; it confers no new right or remedy. Its object, as indicated by its title, was to relieve ship-owners from their onerous responsibilities as common carriers; and the decision in the case of the steamboat Lexington, which was burned on the Long Island Sound, reported in 6 Howard, 344, under the title of *The New Jersey Steam Navigation Company* v. *The Merchants' Bank of Boston* (6 How., 344), is said by Justice NELSON, in *Moore* v. *American Transportation Company* (24 id., 1), and by Justice MILLER, in *Walker* v. *The Transportation Company* (3 Wallace, 150), to have led to its enactment. The first section declares that no owner or owners of any ship or vessel shall be liable for any loss or damage happening to any goods or merchandise shipped, taken in, or put on board thereof, " by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners, provided, that nothing in this act contained shall prevent the parties from making such contract as they please, extending or limiting the liability of ship-owners." And the third and fourth sections, which are deemed to control this case, are in the following terms, viz.: " § 3. The liability of the owner or owners of any ship or vessel, for any embezzlement, loss or destruction, by the master, officers, mariners, passengers, or any other person or persons, of any property, goods or merchandise shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter or thing, loss, damage or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners, respectively, in such ship or vessel, and her freight then pending."

" § 4. If any such embezzlement, loss or destruction, shall be suffered by several freighters, or owners of goods, wares or merchandise, or any property whatever, on the same voyage, and the whole value of the ship or vessel and her freight for the voyage, shall not be sufficient to make compensation to

each of them, they shall receive compensation from the owner or owners of the ship or vessel, in proportion to their respective losses; and for that purpose the said freighters and owners of the property, and the owner or owners of the ship or vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner or owners of the ship or vessel may be liable, amongst the parties entitled thereto. And it shall be deemed a sufficient compliance with the requirements of this act, on the part of such owner or owners, if he or they shall transfer his or their interest in such vessel and freight for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person or persons who may prove to be legally entitled thereto; from and after which transfer all claims and proceedings against the owner or owners shall cease."

The second section provides that no owner or master of any ship or vessel shall be liable for certain enumerated valuable articles of property, without a specification in writing of the true character and value thereof furnished by the shipper, and an entry thereof in the bill of lading therefor. The eighth section declares that the act shall not apply to the owner or owners of any canal boat, barge or lighter, or to any vessel of any description whatever used in rivers or inland navigation. Other sections provide that a charterer of a ship or vessel shall, in certain cases, be deemed the owner thereof, within the meaning of the act, and that the exemption of the owner shall not affect the liability of the master, or mariner, or any parties actually guilty of negligence or wrongful conduct.

There is nothing in the third or fourth sections, above set forth, that can be construed into a declaration or enactment that the rights of action which a party may have against a ship-owner shall be enforced in any particular court, or that the remedy for the enforcement of such right by the injured party was intended to be in any manner changed; but the general object and intent of the provisions contained therein

was to restrict and limit the liability of such owner as a common carrier. Whether the act, within the principle decided in *Norwich Company* v. *Wright* (13 Wallace, 104, etc.), in any degree or at all affects or is applicable to such a case, as the present, where there is no ground or claim for saying that the defendant owed any duty or obligation as a common carrier, to the plaintiff (it appearing that plaintiff's damage was not sustained on board of the defendant's vessel), it is unnecessary to decide on the present appeal. Its provisions, if applicable, could only be used, or interposed, as a partial defence. Its effect was, as has been before stated, to reduce and limit the plaintiff's recovery to the mitigated or modified liability of the defendant as prescribed in and by the third and fourth sections above set forth. It does not entirely defeat the right of recovery or operate as an absolute bar to a right of action. The nonsuit was, consequently, improperly ordered.

It follows that the judgment, entered on that order, must be reversed, and a new trial is granted, costs to abide the event.

DWIGHT, C. This action is brought to recover for an injury done by the unskillful management of a tug belonging to the defendant, which was engaged in towing a scow, on which were certain cattle belonging to the plaintiff.

The questions to be discussed here may be resolved into three. (1.) Can the plaintiff, under the facts of the case, recover in a common-law action provided that can be maintained under the provisions of the United States Constitution? (2.) Has the Supreme Court of New York jurisdiction over the case, the injury having occurred on the River St. Lawrence? (3.) Does the act of Congress, of the year 1851 (5 U. S. Stat. at Large, 635), apply to the case, and, if so, do its provisions oust the court of its jurisdiction?

(1.) The facts of the case show that the plaintiff employed one Nicholas Cavanaugh, who was the owner of a sea-worthy scow, to transport for a fixed price his cattle and horses from

Brockville, on the Canada side of the St. Lawrence, to Morristown, on the American shore. Other drovers had engaged Cavanaugh to do the same service for their cattle. The defendant was owner of the tug, Sarah Daly, which was then lying at the wharf in Brockville, and under the control of the defendant's agent. The captain of the tug made an agreement with Cavanaugh, in the presence of the plaintiff and another drover, to tow the scow for five dollars. The plaintiff and the other drover, to the captain's knowledge, each furnished one dollar of this amount and Cavanaugh three dollars. The tug was managed so unskillfully, after it had taken the scow in tow, that it pulled the boat under the water and caused the loss of sixteen head of cattle belonging to the plaintiff and injured others.

The case is here presented of an owner of goods intrusting them to a bailee to do work upon them, and the bailee, with the knowledge and privity of the owner employing another person to aid him in accomplishing the stipulated work, and by his unskillful conduct causing injury to the owner. Such a state of facts gives the owner a right of action. It is his property which is injured, and he is entitled to redress. True, the bailee having a special property may also have his action. A recovery, either by the bailor or the bailee, is a bar to an action by the other party. (*Green* v. *Clarke*, 12 N. Y., 343.) In that case the defendants were sub-contracting carriers, and it was contended, on their behalf, that the owner could not sue for want of privity, as he was not a party to the contract between the original carrier and the sub-contractor. The court rejected this view, holding that the question of privity was immaterial. GARDINER, J., said that if the bailee had sued and recovered he would have held the amount recovered in trust for the owner; and to insist that the bailee should sue was simply maintaining that a dry trustee should sue rather than the *cestui que trust*. It was, further, his view that the owner had such an interest in the sub-contract that he might, at his election, affirm it and make the sub-contractors liable on their contract as though it had been made

with them on his authority; and that this rule was applicable, whether the sub-contract was express or implied. (Pages 354–357.) There is little doubt, on the testimony, of the liability of the defendant to either the plaintiff or Cavanaugh as they might respectively elect to bring the action. Though not a common carrier, he was bound to exercise ordinary care ( *Wells* v. *Steam Navigation Co.*, 2 Comst., 204; 4 Seld., 375; *Merrick* v. *Brainard*, 38 Barb., 574), and is liable for the want of it. It must be held that the plaintiff had his right of action against the defendant to recover the damages sustained by him.

(2.) The next inquiry is whether the Supreme Court has jurisdiction over a contract of this kind. This depends upon the jurisdiction of the United States courts as conferred in the Constitution. The judicial power of the United States extends to all cases of admiralty and maritime jurisdiction. There can be but little doubt that this language includes the present case. After great discussion and much vacillation of opinion it may now be considered as law that the admiralty jurisdiction of the District Court of the United States extends, by force of the Constitution and of the judiciary act of 1789 (§ 9), to the great lakes as well as to the St. Lawrence, connecting them with the ocean. The leading case of *De Lovio* v. *Boit* (2 Gallison, 398) is now accepted law. In the case of contracts the test of jurisdiction is not necessarily whether the contract is to be performed on navigable waters, but whether the subject-matter of the contract is maritime. (*Insurance Co.* v. *Dunham*, 11 Wall. [U. S.], 1.) The carriage of passengers on navigable waters is a maritime contract. (*The Moses Taylor*, 4 Wall. [U. S.], 411.) The cases are extensively collated and thoroughly discussed in a learned article on admiralty jurisdiction in 5 American Law Review, 581.

The present contract was, according to these and other authorities, a maritime one, over which the United State court has jurisdiction. (*Moore* v. *American Transportation Co.*, 24 How. [U. S.], 1.) This proposition, however,

does not, of itself, exclude State jurisdiction. The true view is that the Constitution vested jurisdiction as it existed when that instrument was adopted. Where the jurisdiction was concurrent with the State courts, it so continued; where it was exclusive in admiralty, it became exclusive in the Federal courts. It is a well known distinction in admiralty that proceedings are either (*in personam*) against the person or (*in rem*) against the property. The latter kind of jurisdiction is exclusive in the Federal courts, and any act of a State legislature purporting to confer it upon a State court is unconstitutional. (*The Moses Taylor*, 4 Wall. [U. S.], 411; *The Hine* v. *Trevor*, id., 555; *The Belfast*, 7 id., 624.)

On the other hand, jurisdiction over the person of one who has violated a maritime contract or committed a maritime tort is not exclusively vested in a court of admiralty. From time immemorial, questions of this kind have been entertained in the English common law courts. They could have been instituted in the State common law courts when the United States Constitution was formed. Proceedings of this character are expressly reserved to the State courts by section 9 of the judiciary act of 1789. (1 U. S. Statutes at Large, 76.) The reservation is still more clearly expressed in section 1 of the act of February 20, 1845, concerning the admiralty jurisdiction upon the great lakes, and the navigable waters connecting them. The words of that act are: "Saving to the parties any concurrent remedy which may be given by the *State laws*, where such steamer or other vessel is employed in the business of commerce or navigation." Though this language is more explicit than that of the act of 1789, yet its purport is the same. The two statutes show unmistakably the intent of Congress to reserve to suitors their remedies in State courts, except so far as to carry out the law of 1851, to be hereafter considered. It is, accordingly, in general, a matter of election with an injured party, whether he will ask relief in a State or a United States court, and the defendant cannot object to a prosecution in a State court on the ground that the cause of action is, in its nature, maritime, so long as the

action is *in personam.* The subject is put at rest by the decision in *Steamboat Co* v. *Chase* (16 Wallace [U. S.], 522), reviewing the case of *Chase* v. *The American Steamboat Co.* ( 9 R. I., 420). This case should be stated with some detail, so as to show the precise ground upon which the decision was placed. There is a statute in Rhode Island giving a right of action to the administrator for the benefit of the next of kin of one who is killed while crossing a public highway, by the negligence or carelessness of a common carrier. A steamer, owned by a common carrier, and plying upon Narragansett bay, a public highway on tidal waters, between Newport and Providence, Rhode Island, negligently ran over one George Cook, crossing upon the bay with reasonable care, and killed him. Chase, as administrator of Cook, brought an action in the State court, under the provisions of the statute, against the carrier. The latter set up in answer that the State court had no jurisdiction, by reason of the provisions of the United States Constitution, and of the legislation of Congress under it. The Supreme Court of the United States in disposing of this question, expressed some doubt whether the admiralty courts had, independent of the State statute, power to entertain a case where one is .wrongfully killed by the act of another. It is quite well settled that a State court has no such jurisdiction. (*Carey* v. *Berkshire Railroad Co.*, 1 Cushing, 475, and cases; *Green* v. *Hudson River R. R. Co.*, 2 Keyes, 294.) In the admiralty courts, the question is still open. (*Cutting* v. *Seabury*, 1 Sprague, 522.) The Supreme Court, therefore, in *Steamboat Co.* v. *Chase*, discussed the question of the jurisdiction of the State court on the theory that a court of admiralty had, without reference to the State statute, jurisdiction over the cause. This view brought up distinctly the point whether the jurisdiction of a State court and an admiralty court may be concurrent in respect to a marine tort. (P. 532.) Mr. Justice CLIFFORD pronounced the opinion of the court. An extract from his opinion shows the ground of the decision. " Where the suit is (*in rem*) against the thing, the original jurisdiction is exclusive in the District

Courts, as provided in section 9 of the judiciary act; but when the suit is (*in personam*) against the owner, the party seeking redress may proceed by libel in the District Court, or he may, at his election, proceed in an action at law, either in the Circuit Court of the United States, if he and the defendant are citizens of different States, or in a State court, as in other cases of actions cognizable in the State and Federal courts exercising jurisdiction in common law cases, as provided in section 11 of the judiciary act. He may have an action at law in the case supposed, either in a Circuit Court or in a State court, because the common law in such a case is competent to give him a remedy, and whenever the common law in such a case is competent to give a party a remedy, the right to such a remedy is reserved and secured by the saving clause contained in section 9 of the judiciary act." (Page 533.)

This course of reasoning, though applied in the case cited to marine torts, is equally applicable to maritime contracts. The legislation of Congress, on the whole subject, shows that it was intended in personal suits to allow a party to seek redress in the Admiralty Court, if he saw fit to do so, but not to make such a course compulsory in any case where the common law is competent to give him a remedy. Tried by this test, the plaintiff, in the present case, had a right to proceed in the State court, and having made his election to do so, that court had jurisdiction. (See, also, *Leon* v. *Galceran*, 11 Wallace [U. S.], 185; 5 Am. Law Rev., 582, 583, 618.)

(3.) The next point to be considered is, the effect of the act of March 3, 1851. (5 Statutes at Large, 635.) The section bearing upon the point presented in the case at bar, is the third. Its terms are as follows: " The liability of the owner or owners of any ship or vessel, for any embezzlement, loss or destruction by the master, officers, passengers, or any other person or persons, of any property, goods or merchandise, shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred, without

the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel, and her freight then pending." This section, according to its plain and apparent meaning, includes three distinct cases. (1.) Damage done to goods on board of the vessel of the owner. (2.) Damage by collision to other vessels and cargoes. (3.) Any other damage or forfeiture done or incurred without the privity or knowledge of the owner. (*Norwich Company* v. *Wright*, 13 Wallace [U. S.], 104.)

Assuming that the act of 1851 is applicable to the case at bar, it falls within the third of these classes. The negligence causing the injury, it is conceded, occurred without the privity or knowledge of the owner. The act of 1851 is founded on a great rule of public policy. It was passed in order to encourage the investment of capital in ships. The main intent of Congress was to introduce into the law of shipping the principle of "limited liability," which is such a marked element in the law of corporations, distinguishing them from the usual individual or partnership responsibility of owners. The ship-owner must act through agents who might, under the ordinary rules of law applicable to agency, subject him to unlimited liability. The statute, for his protection, allows him to put at risk a limited amount of his capital, as a stockholder in a manufacturing company may do by the general rules of law governing corporate stock. This principle, however, does not of itself affect the jurisdiction of a State court to entertain an action against a ship-owner for damages. In many cases, the injury done by the agents of the owner would not be of such a nature or extent as to bring the statute into practical operation. In cases where the loss of the injured party is much less than the value of the ship, an ordinary action for damages will naturally be resorted to. There is no reason why it should not be, unless there is something in the other sections of the act of 1851 which necessitates a different conclusion. The only other section which could affect the case is the fourth. The

substance of that is, that where any loss, etc., falling within the third section, is sustained by several owners of property, etc., and the whole value of the vessel and her freight is not sufficient to pay all the losses, a *pro rata* compensation is to be paid to the respective parties who have sustained losses. In such a case, "appropriate proceedings" may be taken in court by any of the parties interested to have a due apportionment made. The owner of the vessel and freight may, at his option, transfer his interest to a trustee for the claimants, whereupon all claims and proceedings against him shall cease, and the property transferred to the trustee will be distributed among the respective claimants on equitable principles.

There is nothing in this section to oust the State court of its jurisdiction. It does not begin to operate until there is some affirmative act by a party interested to avail himself of the benefits of the statute. The section requires "appropriate proceedings" to be instituted in a competent court before there can be any apportionment. Before the ship-owner's liability is terminated he must, as has been seen, make an assignment of his interest to a trustee, or do some equivalent act. Neither of these acts may be necessary or expedient. In that case, no reason can be given for depriving the State court of a jurisdiction which, without the statute of 1851, it would plainly have. The correctness of these general views is fully sustained by the case of *Norwich Company* v. *Wright* (13 Wall. [U. S.], 104). That case gives construction to a number of doubtful questions under the act of 1851. It points out the mode of proceeding in case an action for damages is pending in a State court against a ship-owner, where such owner seeks to avail himself of the provisions of the statute. He should file a libel in admiralty, with a payment into court of the value of the ship and freight, or make an assignment of them to a trustee. He may then plead these facts in the State court in bar of the action, or he may procure an order from the Admiralty Court restraining the further prosecution of the action. (P. 125.) There is no hint here, that the State court

has no jurisdiction. It is plain, that this method can only be adopted when the owner is willing to pay into court the value of the ship, or else to make the statutory assignment. Where one of these acts is not done, the action continues in the State court.

Reference should also be made to the fifty-fourth rule in Admiralty. This owes its existence to the discussions evoked by *Norwich Company* v. *Wright (supra).* (See the rule in 13 Wallace, XII.) It provides, in substance, that when any case within the act of 1851 arises, if the owner desires to claim the benefit of the limitation of liability provided for in the act, he may file a petition in the proper District Court, setting forth the facts on which the limitation is claimed, and praying proper relief. An appraisement is then made of the value of the owner's interest, and the amount is paid into court, or due security for such payment given, or, at the owner's election, an assignment of his interest is made to a trustee, according to the fourth section of the statute. The District Court of the United States then issues a monition against all persons claiming damages for the embezzlement or destruction of property, or injury to it, to appear before the court and make proof of their claim, and, on the ship-owner's application, an order is issued restraining *the further prosecution* of all suits against him. After this, all further proceedings will be had in the United States court, the property being applied by it to the payment of the respective claims. This rule shows, in the clearest manner, the opinion of the Supreme Court of the United States, that the act of 1851 does not of itself deprive the State court of jurisdiction. There must be specific action on the part of the ship-owner, or other persons interested in the fund, invoking the aid of the statute, and after that has been taken, and in consequence of it, further prosecution in the State court is restrained.

The act of 1851 has received construction in *Knowlton* v. *Providence & N. Y. S. S. Co.* (53 N. Y., 76), but that decision does not bear so closely upon the facts of the present case as to require special notice.

On the whole, the motion for a nonsuit should have been denied, and as it was an error to grant it, the judgment appealed from should be reversed.

All concur.

Judgment reversed.