By the Court.—Smith, J.
*[After stating the facts.]—We are of opinion that the decision of the court which tried this cause was right, both upon the authority of the adjudged cases and upon principle.
In Exp. Mure (2 Cox, 63), which is one of the earliest adjudged cases in point, the facts were these : James and John Woodbridge, being indebted in a large sum to Sir Barnard Turner, assigned to him as a security for their debt, a bond and warrant of attorney, made by one Nelson to them for £3,000. Turner and his attorneys delayed the collection of the bond, (though judgment was taken upon it) for a period of five months, at the end of which time Nelson died insolvent. The judgment could have been collected of *448 him at any time during the five months. The Wood-bridges became bankrupt, and their assignee presented a petition to the chancellor, stating the facts and praying that the amount which Sir B. Turner, might, with due diligence, have collected from Nelson, might be struck out of the amount of, or set off against the debt proved by Sir B. Turner in bankruptcy. After able arguments by counsel, the chancellor, having discussed the question in an elaborate and learned opinion, granted the prayer of the petition. In concluding his opinion, he says: “I am therefore of opinion that whoever takes a bond in the manner this was taken, makes it his own to the effect of binding himself to make it available as far as he can by ordinary diligence.......It is admitted, that if this had been the case of notes or bills of exchange, due diligence must have been used by such a holder as this; but it is said that the reason of that is, that a bill would lose its effect if such diligence was not used, for that by law if the acceptor be not called upon at the proper time, the drawer, &c. are discharged; and to be sure that is an incident in the case; but the principle of it is more extensive; it is, that if the holder of the bill will give credit to the person first liable to pay it, he takes it wholly upon himself ; the same principle wiE hold as to other securities as does with respect to bills. I do not say this is such a decided case, as it is with respect to bills, but it seems so to me at present. ... In the present case I think the bond was in the same situation in the hands of Turner as if it had been capable of assignment, and had been actually assigned to, and vested in him at law; he was in all respects the absolute master of the bond. ... It was as much the business of Turner to put this bond in force, as if it had been a note of hand. ... It has been said not to be an admissible idea, that in the case of an assignment of a *449 bond as a security, you shall charge the assignee for negligence in the same manner as you would charge an attorney enployed to put the bond in suit. I answer that, generally speaking, that which would be negligence in one employed to make the bond available, must be so in one who has taken upon himself to make it applicable in payment of the debt of the assignor, and who is invested with complete authority for that purpose. I do not think myself bound to say precisely what shall be such a degree of negligence as to have this consequence; for here it was gross; five months had elapsed, which ought to have been made available. I think, therefore, that here Turner must be charged for his negligence, and indeed I think it very difficult to conceive a case where there has been anything like forbearance to the debtor without the concurrence of the assignor, without involving the assignee in the consequences of such conduct.”
In Williams v. Price, 1 Sim. & Stuart, 582, the court held that a creditor to whom his debtor assigned a judgment against a third party as security for his debt, is to be charged not only with what he actually collected on the assigned judgment, but with what he might have collected, but for his willful default or neglect.
In Peacock v. Pursell, 14 Com. Bench N. S. 728, the plaintiff, being defendant’s creditor, had received from him as collateral security for his debt, a bill of exchange drawn by a third party, but failed to present the bill at maturity for payment, and to give notice of non-payment, by reason of which the bill was lost, and it was adjudged that the laches of the plaintiff made the bill equivalent to payment of the amount thereof on the debt as collateral to which he received it. In laying down the rule applicable in such a case, the court said: “If the creditor, when the bill falls due, is guilty of laches whereby the security becomes *450 deteriorated or valueless, it becomes equivalent to actual payment.”
The case of Wakeman v. Gowdy, 10 Bosw. 208, holds that a creditor receiving from his. debtor, as collateral security, a promissory note made by a third person, past due, with the request to collect it and apply the proceeds to the payment of the debt, though without any request to sue upon it, incurs the obligation to use diligence in its collection, and to sue if necessary. And the creditor having received the note as such security, at a time when the maker was abundantly able to pay it, and on payment being demanded, the maker having intimated that he had a defense, but the creditor neither notified his debtor thereof, nor brought suit on the note, until three months thereafter, and in the meantime the maker had become insolvent, whereby the amount of his note was lost, it was adjudged, that negligence was imputable to the creditor, which made him liable to his debtor for the amount of the note.
In Buckingham v. Payne, 36 Barb. 81, the same principle is laid down on a similar state of facts, and the court approved the doctrine of the chancellor in Exp. Mure,, supra, that the obligation of the creditor in such cases, is the same in effect, as that of an agent or attorney employed to collect the demand; ■(see also Chamberlyn v. Delarive, 2 Wilson, 353; Hoard v. Garner, 6 Seld. 261; Lawrence v. McCalmont, 2 How. (U. S.) 426; Kephart v. Butcher, 17 Iowa, 240, and the opinion of Aleeh, J., in Smith v. Miller, 43 N. Y. 171, 174).
In conformity to these adjudged cases, the elementary writers lay down the rule, that a creditor who receives from his debtor the notes or bills of third parties, as security for his debt, is bound to the exercise of such diligence as is required of a bailee for hire, and is liable to the debtor for any loss or deterioration in *451 the value of the security which may occur, whether through neglect to fix the liability of the parties to such paper, by due demand of payment and notice of non-payment, or to enforce the collection of the paper with proper diligence (Sherman on Negligence, § 245; Wharton on Negligence, § 670, 672; Edwards on Bills, 198, 201; Byles on Bills, 381; 2 Pars, on Notes and Bills, 154).
These authorities fully sustain the decision of the court which tried this cause. And if we considered the case upon principle only, we must arrive at the same conclusion.
The defendant pledged the G-anson note to the bank as security for the payment of the note in suit, and gave the note so pledged into the custody and control of the bank, which thereupon became the bailee thereof, and bound to the same degree of diligence in maintaining and preserving the value of the pledge and saving the defendant from any loss thereon as a prudent business man would exercise in respect to such a note. Different kinds of property, when made the subject of such a bailment as was created in this case, require of the creditor, who is the bailee, different kinds and degrees of care and diligence to preserve it from deterioration and loss, according to the nature of the property, and the incidents which affect its value. Money, bullion and precious stones require only safe keeping ; cattle, horses and other live stock, must be fed, watered and kept secure ; grain must be properly stored and protected from dampness, heating, and other injuries to which it is subject; and so, every species of property held in pledge by the creditor demands appropriate measures to protect it from loss or injury. In the case of bonds, notes or other securities for the payment of money, a prudent business man will take care that they are collected when due, and that, if necessary, payment be enforced by suit, while the parties liable on them *452 are solvent and able to pay them. A creditor, therefore, who receives such securities in pledge from his debtor, and fails to enforce their collection when due, delaying action until the makers become insolvent, is as much guilty of neglect of his legal duty, as if he suffered goods and merchandise, held by him, as like collateral security, to be destroyed for the lack of necessary protection and care.
In the case before us, the neglect of this very duty by the bank of which the plaintiff is receiver, beyond any doubt caused the defendant to lose the amount of the note which he had pledged to the bank, as security for the note in suit. When the pledge was made, Mr. Ganson, the maker- of the note, was perfectly solvent, and for a period of at least four years thereafter, the note could at any time and without difficulty have been collected. The defendant repeatedly urged the president and financial manager of the bank to do his duty, and require payment of the note, and he as often promised to give it the care and attention which his duty required that he should. But he continued to neglect that duty until insolvency and death intervened, and the note became worthless. It makes no difference, that the responsible officer of the bank, in charge of its affairs, and the maker of the note pledged as security to the bank, were one and the same-person; or if the fact does make a difference, it operates rather in favor of the defendant than against him. If the note pledged had been made by a third person, having np relation to the bank, the negligence of the latter could not have been more marked or resulted more injuriously to the defendant.
The judgment appealed from must be affirmed with costs.

Present, Clinton, Ch. J., and Smith, J.