LOUIS BERGER et al., Doing Business as J. B. EXPRESS Co., Appellants, *v.* 34TH STREET GARAGE, INC., Respondent.

First Department, November 29, 1948.

*Benjamin L. Tell* of counsel (*Solomon M. Cheser* with him on the brief; *Tell, Cheser, Werner & Breitbart,* attorneys), for appellants.

*Arthur A. Beaudry* for respondent.

SHIENTAG, J. This is an action brought by the bailors of a truck, loaded with goods, against the bailee, a garage-keeper for damages resulting from the failure of the garage-keeper to redeliver the merchandise on the truck although the truck itself was redelivered.

It is alleged in the complaint that an agreement was made between plaintiffs and defendant whereby the defendant accepted plaintiffs' automobiles and trucks, and merchandise contained thereon, for storage, and agreed to redeliver the same. The delivery of this specific truck and goods is then alleged. The wrong claimed is that the defendant negligently permitted the truck and contents to be removed from the garage without the consent of plaintiffs and permitted the cartons and cases of merchandise to disappear from the truck. The reasonable value of the merchandise is pleaded and it is then stated in paragraph Ninth " that the plaintiffs herein were the bailee of the cargo and are suing on behalf of the owners of the goods as bailee of the cargo."

Originally an action was brought by the owner of the goods against the defendant garage owner, which action was dismissed

on the authority of *Cohen* v. *Koster* (133 App. Div. 570) and *Coons* v. *First National Bank of Philmont* (218 App. Div. 283). Thereafter the plaintiffs, who are the carriers and who made the direct contract with the garage company, brought this action.

The motion to dismiss the complaint for insufficiency is based on the claim that plaintiffs' customer has no cause of action on a contract of bailment between plaintiffs and defendant, and may not maintain an action for its breach, and that it follows that no action can be brought in their behalf for the breach of such contract.

Whatever may have been the wording of the former complaint brought by the owners of the merchandise (an issue which is not before us), under the present complaint of the carrier we have no doubt that a cause of action is stated. The decision in *Cohen* v. *Koster (supra)* was based on an agreed statement of facts from which the majority of the court inferred as a fact that the defendant had not received the merchandise for storage for the plaintiff owner and had no notice that it was upon his premises, that he was therefore not a bailee and owed no duty to protect such property and could not be held for either negligence or conversion, since under the particular circumstances of the case there was no duty owed to the plaintiff. The *Coons* case *(supra)*, also referred to, was a case in which it was clear that the defendant had no knowledge that it was the bailee of goods belonging to the plaintiff. (Laidlaw, Principles of Bailment, 37 Com. L. J. 134, C. C. H. Legal Periodical Digest, 1932, par. 5538, 16 Corn. L. Q., 286 *et seq.*)

Under the present complaint, however, as appears from the statement of its contents already given, the fair intendment is that there was a contract under which the defendant agreed to become the bailee of goods belonging to plaintiffs' customers and carried on his trucks. Accordingly, there seems to be no reason whatever why the defendant should not be called upon to explain the misdelivery.

It is the common law of England and of this State that in an action against a stranger for loss of goods caused by his negligence the bailee in possession can recover the full value of the goods although he would have a good answer to an action by the owner-bailor for damages for the loss of the thing bailed. This principle is important because it is drawn to our attention in the briefs that the plaintiffs in this case have only a limited liability to the owner.

The leading case on this subject which reviews the history of the doctrine is *The Winkfield* ([1902] Prob. 42; 71 L. J. [P.] 21).

There a ship containing mail was injured by another vessel. The owner of the latter paid money into court subject to claims. The Postmaster-General of Great Britain claimed the right, as bailee of the senders of the mail, to recover the full value of the lost letters, parcels, etc. COLLINS, M. R., said (pp. 24, 27): " It seems to me that the position that possession is good against a wrongdoer, and that the latter cannot set up the *jus tertii* unless he claims under it, is well established in our law. * * * a long series of authorities establishes this in actions of trover and trespass at the suit of a possessor. And the principle being the same, it follows that he can equally recover the whole value of the goods in an action on the case for their loss through the tortious conduct of the defendant. I think it involves this also, that the wrongdoer who is not defending under the title of the bailor is quite unconcerned with what the rights are between the bailor and bailee, and must trust the possessor as the owner of the goods for all purposes quite irrespective of the rights and obligations as between him and the bailor. * * * As between bailor and bailee the real interests of each must be enquired into, and, as the bailee has to account for the thing bailed, so he must account for that which has become its equivalent and now represents it. What he has received above his own interest he has received to the use of his bailor. The wrongdoer, having once paid full damages to the bailee, has an answer to any action by the bailor ".

In accord with the English authority are: *Green* v. *Clarke* (12 N. Y. 343); *Parish* v. *Wheeler* (22 N. Y. 494, 511); *Thompson* v. *Fargo* (49 N. Y. 188); *Baird* v. *Daly* (57 N. Y. 236); *First Commercial Bank* v. *Valentine* (209 N. Y. 145, 149); *Corcoran* v. *Huntington Lumber & Coal Co.* (211 App. Div. 803). See, also, A Re-examination of the Winkfield Case (9 Ford. L. Rev. 247).

As to the history of this doctrine, originally the party in possession was the only one who could enforce claims for injury to bailed property. The justification of the rule was pragmatic: the bailee would be the first to notice the loss or injury, and, moreover, his liability to the owner was absolute. Later it was thought convenient also to permit the owner out of possession to sue the third party who had injured or negligently or tortiously lost or taken the property (Holmes, Common Law, p. 164 *et seq.*). The law of bailment was settled long before the law of special or general assumpsit was developed, and the basis of the law of bailment is not contract (although it is often asserted to be), but lawful possession for any reason as against the third party (*Foulke* v. *New York Consol. R. R. Co.*, 228 N. Y.

269; Laidlaw, Principles of Bailment, 37 Com. L. J. 134–144, 16 Corn. L. Q. 286 *et seq.;* Bailments, 10 Notre Dame Lawyer 287; Beale, The Carrier's Liability: Its History, 11 Harv. L. Rev. 158; Arterburn, The Early Liability of a Bailee, 25 Mich. L. Rev. 479; Story on Bailments, ch. I; 3 Holdsworth, History of English Law, p. 336).

Any excessive amount recovered by the bailee-plaintiff is held to the use of the owners of the property. The duty of the bailee to account has been recognized and established for many years. (*Turner* v. *Hardcastle,* 11 C. B. N. S. 683; *Goldstein* v. *Harris,* 24 Ala. App. 3; *Stillwell* v. *Staples,* 19 N. Y. 401, 405; *Wilson & Co., Inc.,* v. *Hartford Fire Ins. Co.,* 190 App. Div. 506, affd. 229 N. Y. 612; 2 Kent's Commentaries [12th ed.] 568; cf. *Exton & Co.* v. *Home Fire & Marine Insurance Co.,* 249 N. Y. 258.)

There has been considerable discussion in criticism of the dictum in the *Winkfield* case quoted above, to the effect that payment by the wrongdoer to the bailee discharges the wrongdoer from all claims against the owner. (Property, Bailments, 15 Harv. L. Rev. 585; Warren, Qualifying as Plaintiff in an Action for a Conversion, 49 Harv. L. Rev. 1084; A Re-examination of the Winkfield Case, 9 Ford. L. Rev. 247.) The point of these discussions is to the effect that, before the bailee is allowed to collect in full, there should be some showing that the owner-bailor acquiesces in the lawsuit. This acquiescence, it is said, may be either express or implied; the writers go so far as to hold that the *Winkfield* case, where the Postmaster-General of Great Britain was suing to recover the value of mail lost, such a consent was implied, though in fact the point is not discussed, the spirit of the decision is against any such gloss or limitation, and the dictum shows that no such thought was entertained by the Justices of the Court of Appeal. While the law in this country is undoubtedly settled that such recovery may be had regardless of consent (*Mechanics & Traders' Bank* v. *Farmers & Mechanics Nat. Bank,* 60 N. Y. 40; *Emerson* v. *Thompson,* 59 Wis. 619; *Anderson* v. *Gouldberg,* 51 Minn. 294), the question need not be considered in the present case, since there is in the complaint before us this special allegation of representation of the owner's interest. The proof of that allegation will show consent by the owner to the bringing of the action.

Defendant-respondent claims that there is a distinction in the law between a cause of action based on what is called by it " a mere breach " of its contract of bailment with plaintiffs and a cause of action against the same defendant for willful conversion

or other affirmative wrongdoing. We do not yet know what facts defendants will offer to excuse wrongful delivery or theft from its premises, and we cannot judge under which category of conduct defendant's acts herein would be classified. But, regardless of that, the cases make no such distinction, At least in the Court of Appeals decisions there is no hint of such a limitation.

The cases relied on by defendant in support of this position are *Cohen* v. *Koster* (133 App. Div. 570, *supra*), which has already been considered as not attempting in any way to upset the established law of bailment, and *Coons* v. *First National Bank of Philmont* (218 App. Div. 283, *supra*). It is true that in the latter opinion the statement was made that in a bailment action liability is always grounded in contract. The statement is too broad in view of the many decisions cited in this opinion. That case was rightly decided because there was no showing that the defendant knew that its depositor's daughter had put some of her property in the safe deposit box involved. Under the law of bailment, a party may become bailee even *in invitum* and owe some measure of care to the owner if it has knowledge that the property has come into its possession (1 Halsbury, Laws of England, §§ 1202, 1203).

The general principle urged by the defendant was specifically rejected in *Baird* v. *Daly* (57 N. Y. 236, *supra*). There, after stating the facts, Dwight, C., said (p. 245) : " The case is here presented of an owner of goods intrusting them to a bailee to do work upon them, and the bailee, with the knowledge and privity of the owner employing another person to aid him in accomplishing the stipulated work, and by his unskillful conduct causing injury to the owner. Such a state of facts gives the owner a right of action. It is his property which is injured, and he is entitled to redress. True, the bailee having a special property may also have his action. A recovery, either by the bailor or the bailee, is a bar to an action by the other party. (*Green* v. *Clarke,* 12 N. Y. 343.) In that case the defendants were sub-contracting carriers, and it was contended, on their behalf, that the owner could not sue for want of privity, as he was not a party to the contract between the original carrier and the sub-contractor. The court rejected this view, holding that the question of privity was immaterial. Gardiner, J., said that if the bailee had sued and recovered he would have held the amount recovered in trust for the owner; and to insist that the bailee should sue was simply maintaining that a dry trustee should sue rather than the *cestui que trust*. It was, further, his view that the owner had such an interest in the sub-contract that he might, at his election, affirm

it and make the sub-contractors liable on their contract as though it had been made with them on his authority; and that this rule was applicable, whether the sub-contract was express or implied.'' The authority of this case has never been impugned, and on the contrary has recently been relied on by SEARS, J., in *Goebel* v. *Clark* (242 App. Div. 408) and McLAUGHLIN, J., in *Leland Wine & Liquor Store* v. *Midtown Warehouse* (181 Misc. 106).

It is, therefore, clear that the words used in this complaint which have been objected to, namely that the suit was being brought on behalf of the owner of the property, is merely a statement of what the law requires of the plaintiff in the event of recovery. While it may be true that the matter need not be pleaded because it is immaterial, as far as the defendants are concerned, what disposition is made of the money, it serves to show in this case, where the bailee admits, dehors the record, to having but a limited personal interest in the recovery, that the owner has in fact consented to let the bailee represent him. Plaintiff may have chosen to bear a heavier burden of proof than required, but he has that option.

The order should be reversed and the motion denied, with costs to the appellants.

PECK, P. J., DORE, CALLAHAN and VAN VOORHIS, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellants and the motion denied. [See 275 App. Div. 660.]