LORRAINE G. GRACE, Respondent-Appellant, *v.* STERLING, GRACE & COMPANY, Appellant-Respondent, and CLEVELAND TRUST COMPANY, Respondent-Appellant.

First Department, April 30, 1968.

*Sydney J. Schwartz* for appellant-respondent.

*John F. Cannon* of counsel (*Robert P. Borsody* with him on the brief; *Sullivan & Cromwell,* attorneys), for Cleveland Trust Company, respondent-appellant.

*Louis P. Neustein* of counsel (*Neustein & Kraut,* attorneys), for Lorraine G. Grace, respondent-appellant.

EAGER, J. P. This action was brought to recover damages for the loss sustained by the owner of certain convertible debentures by reason of a failure to convert them into stock prior to their redemption date, and all parties appeal from an order and judgment entered upon a determination of plaintiff's motion and defendants' cross motions for summary judgment.

Plaintiff was the owner of $25,000 4¼% convertible bearer (coupon) debentures of Gardner-Denver Company due October 1, 1976. She was a customer of defendant Sterling, Grace & Company (Sterling), a copartnership (a stockbroker), of which her husband was a member. On or shortly prior to December 21, 1962, the plaintiff pledged the Gardner-Denver debentures, together with other securities, to Sterling as security for an indebtedness owing by her. Shortly thereafter and pursuant to the authority of plaintiff, Sterling repledged the Gardner-Denver bonds along with other securities to defendant Cleveland Trust Company (Cleveland) as collateral security for a $550,000 loan to Sterling. Cleveland had made and did make other loans

to Sterling, and the securities, which were held as collateral for all the several loans, were deposited by Cleveland with Irving Trust Company in New York City. Cleveland's banking office was in Cleveland, Ohio, and the custodian arrangement with Irving Trust Company was entered into for the purpose of enabling Sterling to readily substitute securities which were the subject of its pledges with Cleveland, such substitution, however, to be effected solely upon instructions from Cleveland. Incidentally, the custodian agreement between Irving Trust Company and Cleveland provided that the former would "not endeavor to keep [Cleveland] informed of changes affecting the collateral, such as conversions, rights to subscribe, collection of dividends, etc."

The said 1976 debentures of the Gardner-Denver Company contained provisions whereby they could be converted prior to redemption into common stock of the company. In August and September, 1964, while the plaintiff was traveling abroad, the Gardner-Denver Company duly gave notice, with proper publication thereof, that the debentures would be called for redemption on October 1, 1964. The debentures were then in the possession of Cleveland, held by its custodian, Irving Trust Company. It appears that, if the debentures had on or shortly prior to such date been converted into common stock in accordance with the conversion privileges, the plaintiff would have received stock valued on the market at nearly twice the face value of the debentures. They were, however, not converted and the plaintiff accordingly sustained a substantial loss.

The plaintiff alleges that her damages were occasioned by the negligence of defendants Sterling and Cleveland and each of said defendants alleges a cross claim for recovery over against the other.

Special Term held that, on the undisputed facts, Sterling had violated its duty as pledgee to exercise reasonable care with respect to the securities and awarded judgment against it in favor of plaintiff. This court unanimously concludes that the record as a matter of law supports the liability of Sterling.

Special Term held, however, that as a matter of law plaintiff had no cause of action against Cleveland, placing the holding upon the ground of lack of privity between her and such defendant as a subpledgee. The majority of this court does not agree with such holding.

Under the common law and by statutory provision, Cleveland, holding the debentures as a pledgee, albeit a subpledgee from a pledgee, was under the duty to exercise reasonable care for the preservation and protection of their value.

Section 9-207 of the Uniform Commercial Code provides as follows:

"(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. * * *

"(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest."

Cleveland, repledgee of the debentures from Sterling, was a lender of money in whose favor there existed a security interest and, therefore, was a "secured party" under the duty of exercising reasonable care for the preservation and protection of the collateral held by it (Uniform Commercial Code, § 9-105, subd. [1], par. [i]).

Furthermore, at common law, and independent of the statutory provisions aforesaid, a pledgee, considered a bailee, is held bound to exercise ordinary care for the protection and preservation of the subject matter of the pledge. (See Restatement, Security, § 17, comment b; 53 N. Y. Jur., Secured Transactions, § 84; *Willets v. Hatch,* 132 N. Y. 41, 46; *Ouderkirk v. Central Nat. Bank of Troy,* 119 N. Y. 263; *Cutting v. Marlor,* 78 N. Y. 454; *Hazard v. Wells,* 2 Abb. N. Cas. 444; *Fleming v. Northampton Nat. Bank,* 62 How. Pr. 177.)

Where commercial paper or other securities are placed in the custody and control of the pledgee, it is clear that his responsibility is not limited solely to the physical preservation of the same. His responsibilities extend to the exercise of such care as a reasonably prudent pledgee would exercise under like circumstances to protect and preserve the validity and value of the securities. This is the rule at common law and also under the Uniform Commercial Code. (For definition of "collateral" as used in subdivision (1) of section 9-207, see Official Comment 3 of section 9-105 thereto.) Thus, where bearer or negotiable instruments, taken as collateral, mature before the payment of the secured indebtedness, the pledgee is required, prior to, on or following the due date, to take such action as reasonable prudence suggests to preserve the value of the collateral, such as the giving of proper notice to parties contingently liable and the taking of necessary steps to collect the instruments. (See *Easton v. German-American Bank,* 24 F. 523, affd. 127 U. S. 532; *Hazard v. Wells, supra;* 53 N. Y. Jur., Secured Transactions, § 84, *supra;* Brown, Personal Property [2d ed.], § 134, p. 674; Schouler, Law of Bailments [3d ed.], § 206. See, also, Restatement, Security, § 18; Ann. 51 A. L. R. 609.) By analogy, it follows that where pledged convertible debentures are called at par and thereby become payable while in the control of a

pledgee, he may be required in the exercise of reasonable care to do more than just stand by and wait for payment of the face value of the securities.

The absence of a contractual relationship between Cleveland and the plaintiff does not as a matter of law absolve Cleveland from responsibility. Lack of privity does not constitute a defense to the cause of action alleged by plaintiff, as owner of the debentures. The duty which is imposed by law upon a pledgee to exercise reasonable care in the preservation and protection of the collateral is not a contractual obligation. Although arising in connection with a contractual relationship, the duty exists as an incident to the possession and control of the goods or securities by the pledgee. The contractual relationship creates the pledgee's right to possession of the collateral but his responsibilities under the law arise from his taking and maintaining such possession. "While the relationship so created is basic, the legal duty is not a matter of contract; rather it is imposed by law." (8 Am. Jur. 2d, Bailments, § 198, p. 1084. See, also, 8 C. J. S., Bailments, § 26.)

There is nothing anomalous in a general rule which imposes upon the holder of personal property the duty to exercise ordinary care to guard against a reasonably foreseeable loss to the owner thereof, whoever he may be. (See 65 C. J. S., Negligence, § 4[11]. Cf. *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, 393.) In any event, where the gravamen of a cause of action against a bailee (including a pledgee) is grounded in negligence, the existence of privity is not considered an essential element thereof. It is settled that where a bailee of goods or securities re-bails, repledges, or on some other contractual basis delivers possession of the same to another, and the latter is guilty of negligence or other misfeasance resulting in the loss of or injury to the property, the latter is liable directly to the owner who was the original bailor. " The bailee who is careless in the keeping of the goods which he receives as those of A, does not escape liability though the deposit may have been made by B." (*Glanzer* v. *Shepard* [Cardozo, J.], 233 N. Y. 236, 239.) The owner and original bailor, although not entitled to possession, may sue the third party who received the goods from the owner's bailee and who has negligently or tortiously injured, lost or converted the same. (*Berger* v. *34th St. Garage*, 274 App. Div. 414, 417, citing Holmes, Common Law, p. 164 *et seq.*) " It is [the owner's] property which is injured, and he is entitled to redress." (*Berger* v. *34th St. Garage, supra*, p. 419.) Either the general owner or the bailee or pledgee having the special property may sue; such "right to sue is indispensable to enable

each to protect his particular interest, but as the law will not suffer defendant to be twice harassed for the same cause, only one suit can be brought and it will be a bar to every other." (*Green* v. *Clarke*, 12 N. Y. 343, 353–354 [concurring opinion, GARDINER, Ch. J.]). Further, to the effect that a right of action exists in favor of the owner of the goods or securities for the tort of a third person who receives the same under a contractual relationship with a bailee (including a pledgee) from the owner (see 8 C. J. S., Bailments, § 40, subd. b; 8 Am. Jur. 2d, Bailment, § 103; *Harriman* v. *New York, Chicago & St. Louis R. R. Co.*, 253 N. Y. 398, 402; *Baird* v. *Daly*, 57 N. Y. 236; *Wroblewski* v. *Otis Elevator Co.*, 9 A D 2d 294, 296; *Royal Stein, Inc.* v. *B. C. U. Holding Corp.*, 283 App. Div. 700); and that the third person held liable " might be a repledgee to whom the pledgor had allowed the pledgee to repledge the pledged [property] and who had violated a duty in respect to it " (see Restatement, Security, § 38, comment *a*, p. 118).

The critical question here, as conceded by the dissenters, is " not a question of privity   *   *   *   but of reasonable care ". Also we agree with the dissenting opinion that " the presence or absence of reasonable care   *   *   *   must be determined in the light of the circumstances ". In determining the care to be exercised by a bailee, " the nature and the value of the property, and the means of protection possessed by the bailee and the relation of the parties and other circumstances must be considered." (*Cutting* v. *Marlor*, 78 N. Y. 454, 458, *supra*; *Willets* v. *Hatch*, 132 N. Y. 41, 46, *supra*). The pledgee is required to exercise that " diligence which persons of common prudence usually bestow towards such property or upon their own property at the time and place in question and under like circumstances; or, if the pledge be to bankers or others whose vocation implies skill or unusual facilities, such diligence as those commonly prudent of that class are wont to observe in such affairs." (Schouler, Law of Bailments [3d ed], *supra*, § 204, p. 210.)

The value of the Gardner-Denver debentures, owned by the plaintiff and held by Cleveland as pledgee, depended to a great extent upon their convertibility feature. Undoubtedly, Cleveland was aware of this valuable feature. From time to time, according to prudent banking practices, there was a review and appraisal by Cleveland of all the securities taken and held by it as collateral for loans. Cleveland also maintained a department for the benefit of individual customers to check notices of conversion or redemption of securities. Furthermore, the custodian agreement with Irving Trust Company expressly put Cleveland on notice that Irving Trust Company was not assum-

ing any obligation to keep Cleveland " informed of changes affecting the collateral, such as conversions ". So, Cleveland was fully cognizant that it did have a measure of responsibility with respect to the conversion features of the particular debentures.

The dissenting opinion would absolve Cleveland from any responsibility herein for the reason, among others, that it " had no information as to the identity of the original pledgor." Although this is a relevant circumstance to be considered by a trier of the facts, lack of such information should not relieve Cleveland as a matter of law from the duty of exercising reasonable care for the protection of the value of the collateral. Cleveland knew that Sterling was a stockbroker and as such was handling numerous transactions involving stock owned by customers. Sterling was in fact indebted to Cleveland for broker's loans in large amounts collateralized by various securities worth several million dollars. Under the circumstances, Cleveland may be considered to have been on notice that a substantial part of the securities pledged by Sterling were individually owned by customers or other third persons having business relationships with Sterling.

Section 21 of Restatement, Security, referred to in the dissenting opinion, if it accurately reflects New York law, is not applicable here. Such section, by its wording, does not purport to apply under all circumstances to prescribe or limit the duties required of a pledgee of convertible securities. Subdivision one of the section applies only where the pledgor has made a choice, and here neither the plaintiff nor Sterling made a choice. Subdivision (2) of the section applies where a proposed redemption is peculiarly within the knowledge of the pledgee, but such is not the case here.

We have not overlooked the argument that Sterling had paid the $550,000 loan shortly before the date fixed for the redemption of the Gardner-Denver bonds. The fact, however, is that the particular debentures were not surrendered and they remained in the possession and under the control of Cleveland beyond the redemption date. It is undisputed that Sterling was further indebted to Cleveland upon notes representing other loans and that, by virtue of the provisions of such notes, the debentures would be held by Cleveland also as security for such notes. Under these circumstances, as long as it continued in possession of the debentures, Cleveland was under the duty of exercising reasonable care for the preservation of the value of the investment. (*Ouderkirk* v. *Central Nat. Bank of Troy*, 119 N. Y. 263, 272, *supra*.) The payment of the particular loan, and the

attendant circumstances, are, however, matters for the consideration of the trier of the facts.

As a reasonably prudent bank keeping informed with respect to collateral held by it, Cleveland would know that, following a duly published redemption date, the Gardner-Denver debentures would drastically depreciate in value. A change in the collateral would necessarily occur and Cleveland would be required to surrender the bonds, either for conversion or payment. Prudent banking or investment practices would suggest that, prior to redemption, the debentures be sold or converted to protect the value of the investment. A banker or businessman having control of the debentures would proceed accordingly for the preservation of the value of Cleveland's security interest as well as for the benefit of the owner.

The liability of Cleveland to the plaintiff may depend upon whether the exercise of reasonable care required it to establish and maintain adequate checking and follow-up procedures with respect to convertible securities held by it as pledgee. In justification of its failure in this regard, Cleveland refers to an alleged banking custom and usage with respect to broker's loan transactions whereby it was allegedly relieved of the duty to establish the necessary procedures. Although evidence of such a custom and usage would be relevant and material on the issues of negligence, particularly in connection with the cross claims between the defendants, the existence thereof is disputed and does not furnish a basis for disposition of such issues as a matter of law.

Furthermore, bearing in mind that there is some evidence that certain employees of Cleveland had knowledge of the call of the Gardner-Denver debentures for redemption, the question also arises whether in the exercise of reasonable care, Cleveland was required, at the very least, to notify its pledgor, Sterling, of the situation. This could have relieved it from further responsibility. " In many cases a secured party having collateral in his possession may satisfy his duty of reasonable care by notifying the debtor of any act which must be taken and allowing the debtor to perform such act himself." (53 N. Y. Jur., Secured Transactions, § 84 [citing Comment 1 to Uniform Commercial Code, § 9-207]).

While it is true, as pointed out in the dissenting opinion, that Sterling "was a person equally informed as to securities as [Cleveland] and equally bound to exercise diligence in its care of them ", Sterling's negligence, whether primary or concurrent, would not, however, relieve Cleveland of its duty as a banker-pledgee to exercise reasonable care. " The law is that a bailor

of property is not liable for the contributory negligence of the bailee if his property is damaged by reason of the joint fault of the bailee and a third person, unless there be some element of principal and agent or master and servant involved in the relationship. (*Van Blaricom* v. *Dodgson,* 220 N. Y. 111; *Bowen* v. *N. Y. C. & H. R. R. R. Co.,* 202 Mass. 263; 6 C. J. 1168.) '' (*Osborn* v. *Cline,* 263 N. Y. 434, 438.) A holding relieving Cleveland from responsibility could constitute an unfortunate precedent in other circumstances — for instance, where a broker becomes insolvent after repledging the customer's securities.

We conclude that the circumstances present issues as to Cleveland's negligence and plaintiff's contributory negligence which should be submitted to a trier of the facts. Whether a party was negligent, involving the application of a broad standard of reasonableness, is generally viewed as presenting a mixed question of law and fact. Where there are conflicting inferences as to what should have or should not have been done in the exercise of reasonable care, the negligence issue may not be disposed of as a matter of law. Although the material circumstances may be undisputed, such conflicting inferences raise issues which must be submitted to a trier of the facts. (See, generally, 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3212.03; *Sadowski* v. *Long Is. R. R. Co.,* 292 N. Y. 448, 455; *Gerard* v. *Inglese,* 11 A D 2d 381.)

Finally, the record does not permit us to determine as a matter of law where the ultimate liability for the loss should rest, whether upon Sterling or Cleveland. In this connection, the duties and the liabilities of the parties (perhaps defendants are responsible as joint tort-feasors), and the duties and the liability of defendants to each other, depend upon the resolving of issues of fact.

In light of the foregoing, the order, entered July 19, 1967, should be modified, on the law, to delete the provision in the third decretal paragraph providing that the Cleveland Trust Company's cross motion for summary judgment be granted and to delete the last three decretal paragraphs of said order; the order should be otherwise affirmed, without costs or disbursements to any party; the cross motion of the Cleveland Trust Company for summary judgment should in all respects be denied, without costs; and the plaintiff's alleged cause of action against the Cleveland Trust Company and the cross claims of the defendants should be severed from the plaintiff's cause of action against Sterling, Grace & Company. The judgment, entered August 28, 1967, should be modified, on the law, to delete the first two decretal paragraphs providing for dismissal of the cross claim of the Cleveland Trust Company and for dismissal of

plaintiff's complaint as against the Cleveland Trust Company, and such judgment should otherwise be affirmed, without costs or disbursements to any party.

McGIVERN, J. (concurring). Although I concur in the opinion of and the result directed by Justice EAGER, I would go further. In my view, his exposition leads onward to the ineluctable corollary that Cleveland is answerable to the plaintiff as a matter of law.

Cleveland was a well-rewarded pledgee and had a duty both under the common law and the Uniform Commercial Code to observe reasonable care while the securities were in its custody. And, privity aside, this duty extended to the true owner for any damage. Instead, the securities lost half their value because Cleveland did not exercise a reasonable surveillance of the conversion dates as to the plaintiff. All the more culpable because Cleveland admits it had knowledge of the publication of the notice of redemption and facilities to notify interested parties. And at the time of making the arrangements with the Irving Trust Co., the latter specifically notified Cleveland that as a sentinel Irving was leaving its post. Cleveland cannot exculpate itself by saying it had great expectations of Sterling Grace. Neither the coils of the common law nor of the statute are that easily shaken off. (*Ouderkirk* v. *Central Nat. Bank of Troy*, 119 N. Y. 263; *Traverse* v. *Liberty Bank and Trust Co.*, Superior Court, Suffolk County, Massachusetts, No. 86050 In Equity decided January 30, 1967.) And be it noted, the Uniform Commercial Code is to be liberally construed (§ 1-102, subd. [1]).

STEUER, J. (dissenting). Plaintiff is a customer of defendant Sterling, Grace & Company (Sterling), a stock brokerage concern. There was a substantial debit balance in the account which plaintiff had secured by the pledge of various securities. Among these were $25,000 of convertible debentures of Gardner-Denver Co. Sterling had a rehypothecating agreement with plaintiff allowing it to repledge any of plaintiff's securities pledged to it. Accordingly, Sterling pledged these bonds with Cleveland Trust Company (Cleveland), along with other securities, to secure a loan to it of $550,000. This loan was one of many between Sterling and Cleveland, and their agreement was that any securities pledged or thereafter pledged for any particular loan could be retained by Cleveland to secure any other outstanding indebtedness. The necessities of Sterling's brokerage business required that it continuously withdraw securities pledged with Cleveland and substitute others in their stead; and this was their constant practice. To facilitate these transfers, Cleveland deposited the

securities delivered by Sterling to it with Irving Trust Co. under an agreement whereby the latter assumed the duties of safekeeping and delivery, but no others.

During August and September, 1964, Gardner-Denver Co. gave public notice through newspaper advertising that it would redeem the issue of the convertible 4¼% bonds on October 1, 1964, and those bonds which had not been converted into stock would be paid at their face value.

On September 22, 1964, Sterling paid off the $550,000 loan to Cleveland, leaving, however, several other loans unpaid. Cleveland agreed to release all of the securities pledged for that loan, including the Gardner-Denver bonds, and Cleveland notified Irving Trust Co. to deliver all these securities to Sterling upon Sterling's presenting a list of the securities to be delivered. Sterling did present such a list and did receive the securities set out in the list. However, the Gardner-Denver bonds were not on the list and, hence, were not delivered. Irving Trust Co. continued to hold them as Cleveland's depositary and, under Cleveland's agreement with Sterling, they continued to secure Sterling's over-all indebtedness to Cleveland. On October 8, 1964, Sterling substituted other securities for these bonds, and they were released to it.

On October 1, 1964, if the conversion privilege had been exercised, the stock of Gardner-Denver Co. received for the $25,000 of convertible bonds had a market value of $49,490. As indicated, their face value was $25,000, so that the difference was $24,490, for which the plaintiff has sued both Sterling and Cleveland and each defendant has cross-claimed against the other. On all of these claims, each party has moved for summary judgment against the other.

On plaintiff's claim against Sterling, Special Term gave judgment to the plaintiff and we are in accord that this determination is correct. By statute (Uniform Commercial Code, § 9-207), a secured party owes a duty of reasonable care in the custody of collateral in his possession. This includes necessary steps to preserve rights. It is not disputed that reasonable care in the preservation of the rights would require Sterling to keep itself informed of information as to a conversion of bonds, which information was disseminated generally to the public. At the least, it would be incumbent on the pledgee to notify the pledgor and obtain his views on what steps he though desirable in connection with the securities. Concededly Sterling made no effort to do this and its failure would constitute a breach of its obligation to use reasonable care.

On the branch of the motion whereby plaintiff sought summary judgment against Cleveland and the latter sought the same relief against plaintiff, Special Term decided both motions in favor of Cleveland, denying plaintiff's motion and granting Cleveland's. We believe these dispositions to be correct, although here a majority of the court finds there are factual issues. The duty of a pledgee is not absolute; it is to use reasonable care. The presence or absence of reasonable care cannot be determined as a general proposition applicable to all cases but must be determined in the light of the circumstances. This applies with equal force to the care to be exercised in the preservation of collateral as it does to the driving of an automobile. This is the common law which the statute has codified (*Willets* v. *Hatch,* 132 N. Y. 41; *Cutting* v. *Marlor,* 78 N. Y. 454). In the instance of a change in corporate securities, the duty of a pledgee is to notify the pledgor (but only where the proposed change is in the peculiar knowledge of the pledgee) and then to carry out the pledgor's wishes (Restatement, Security, § 21). It must be recalled that these bonds were bearer bonds and Cleveland had no information as to the identity of the original pledgor. This is not a question of privity (though the lack of privity might well bar plaintiff; semble *Natkin* v. *Exchange Nat. Bank of Chicago,* 342 F. 2d 675), but of reasonable care. It cannot be imagined that Cleveland was required in the exercise of such care to go behind its pledgor to seek out Sterling's pledgor and ascertain what the real owner's wishes were in regard to the bonds. While it might be argued that any bondholder would be in favor of having his bonds converted where there is an immediate substantial advantage, and hence it would be Cleveland's duty to present the bonds for conversion, the circumstances here demonstrate that no failure to use due care is invoked from a failure to take that step. Ordinarily, a pledgee or any other bailee is not required at his peril to take a radical step which may appear advantageous at the moment but may later involve loss. The circumstances here show beyond dispute that Cleveland's pledgor was a person equally informed as to securities as itself and equally bound to exercise diligence in its care of them. Eight days before the conversion date that pledgor had requested the release of these very bonds, together with other collateral, and Cleveland had authorized the release. Cleveland surely had a right to expect that any duties that it might have had with regard to the bonds would terminate with their being reclaimed. When Cleveland became aware that Sterling was not going to exercise its privilege to take back these bonds (a date that does not appear in the record, but necessarily less than

eight days) no instruction in regard to these bonds was given. Furthermore, the fact that Sterling did draw down the bonds some eight days after the conversion date without any protest indicates that it never expected Cleveland to take any steps with regard to them. Strict compliance with the directions of the immediate pledgor can hardly demonstrate a lack of care to the original pledgor where the immediate pledgor is a person fully conversant with the collateral and capable of advised action in regard to it. Neither the statute, nor the common law which it codifies, can be interpreted to make these facts show a lack of reasonable care.

Lastly, we come to the reciprocal motions whereby each of the defendants seeks judgment over against the other. Special Term denied these motions, holding there was an issue, and a majority of the court sustains that holding. We believe that the motion of Cleveland should have been granted. In addition to the reasons which furnish a base for our conclusion that plaintiff cannot recover against Cleveland, there is a further reason. Concededly Sterling is a person who knew or is charged with knowledge of the situation resulting from Gardner-Denver Co.'s redemption notice. Even if Cleveland's failure to advise Sterling could be deemed a failure to use reasonable care, it is not a failure which caused Sterling any damage. The failure to advise another of what that other already knows cannot result in damage.

The order should be modified on the law by granting the cross motion of Cleveland Trust Company as against Sterling, Grace & Company, and, as so modified, affirmed.

CAPOZZOLI, J., concurs with EAGER, J. P.; McGIVERN, J., concurs in separate opinion; STEUER, J., dissents in opinion, in which McNALLY, J., concurs.

Order entered July 19, 1967 modified, on the law, to delete the provision in the third decretal paragraph providing that the Cleveland Trust Company's cross motion for summary judgment be granted and to delete the last three decretal paragraphs of said order; the order is otherwise affirmed, without costs or disbursements to any party; the cross motion of the Cleveland Trust Company for summary judgment is in all respects denied, without costs; and the plaintiff's alleged cause of action against the Cleveland Trust Company and the cross claims of the defendants are severed from the plaintiff's cause of action against Sterling, Grace & Company. The judgment is modified, on the law, to delete the first two decretal paragraphs

providing for dismissal of the cross claim of the Cleveland Trust Company and for dismissal of plaintiff's complaint as against the Cleveland Trust Company, and such judgment is otherwise affirmed, without costs or disbursements to any party.

Settle order on notice.