271 So.2d 190 (1972)
The TALLAHASSEE BANK AND TRUST COMPANY, a Florida Corporation, Appellant,
v.
Gerald D.N. BRYANT, Appellee.
No. P-145.
District Court of Appeal of Florida, First District.
September 21, 1972.
*191 Leo L. Foster, and Julian F. Parker, Jr., of Madigan, Parker, Gatlin & Swedmark, Tallahassee, for appellant.
Ben H. Dickens, of Dickens, Rumph, Franson & Miller, Tallahassee, for appellee.
RAWLS, Acting Chief Judge.
Appellant-Bank by this appeal seeks reversal of a jury verdict and judgment thereon in the principal sum of $15,250.00 in favor of appellee.
We are here concerned with 1,000 Sperry Rand warrants owned by Bryant and pledged to the Bank as security. These warrants granted to the bearer the right on or before September 15, 1967, to convert each warrant into one share of Sperry Rand common stock upon payment of an additional sum of money. Prior to the expiration date, these warrants were traded on the New York Stock Exchange.[1] After September 15, 1967, the warrants were worthless.
By this appeal the Bank poses two points, viz.: (1) Neither the facts nor the law discloses that the Bank breached any duty owed to Bryant, and (2) Bryant's own testimony conclusively established his contributory negligence as a proximate cause of any damages he may have suffered.
Additional facts in a light most favorable to support the judgment are: In 1965, Bryant borrowed $133,000.00 from the Bank and pledged a number of securities as collateral for repayment. The Bank held a power of attorney from Bryant authorizing it to sell or dispose of each pledged stock certificate or warrant. Bryant actively traded in the stock market through a North Carolina broker during the ensuing two years, and in all trades the Bank required substitution for securities traded. The Bank had physical custody of the pledged securities in its vaults. On several occasions Bryant orally requested the Bank to furnish him a list of his securities held by the Bank but such list was never furnished. Among the securities that came into the Bank's possession were 5800 warrants to purchase common stock of the Sperry Rand Corporation. The following words were imprinted on each of these warrants in boldface:
"VOID AFTER SEPTEMBER 15, 1967."
About four or five weeks prior to the expiration of the warrants, Bryant called the Bank with the specific intent of disposing of all Sperry Rand warrants in its possession. In this respect, Bryant testified: "I knew that the Sperry Rand warrants were going to expire and I made the Bank aware that the Sperry Rand warrants were going to expire and because of this particular reason I wanted them sold and I said I needed to get rid of all my Sperry Rand warrants, that they were going to expire." On July 30, 1967, Bryant authorized his broker to receive from the Bank and sell 4800 warrants. During the period from July 30, 1967, until September 15, 1967, the Bank did not advise Bryant of the 1,000 warrants it continued to hold nor did it attempt to dispose of same before they became worthless. Bryant had in his personal possession records from his brokerage firm which, when totaled, revealed that he had purchased during the subject period 8200 Sperry Rand warrants and sold 7200 of same.
The Uniform Commercial Code adopted by Florida in 1967 apparently gives all *192 things to all people.[2] Bryant relies upon Section 679.207, which provides, inter alia:
"(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.
"(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest."
and cites Grace v. Sterling, Grace and Company,[3] as being factually in point. There, convertible debentures, which had been pledged to a bank, were called for redemption before a day certain. The pledgor was in Europe and had no notice of the call. The trial court entered judgment against the pledgor's broker and the Bank. The appellate court in affirming stated:
"Where pledged convertible debentures are called at par and thereby become payable while in the control of a pledgee, he may be required in the exercise of reasonable care to do more than just stand by and wait for payment of the face value of the securities."
Appellant distinguishes the holding in Grace, supra, from the facts in the instant cause by pointing out that in Grace the Bank had superior knowledge, whereas here it is undisputed that Bryant knew the expiration date of the warrants.
Appellant-Bank also contends that it would have been guilty of a crime[4] if it had sold or disposed of the subject warrants. It further argues that Bryant, as evidenced by his extensive trading in the market during the period of time the warrants were pledged, exercised control over the subject property, and such conduct is consistent with Section 679.311, Florida Statutes, F.S.A., of the Uniform Commercial Code.[5] To the foregoing arguments, appellee responds that Section 679.207[6] of *193 the Uniform Commercial Code clearly provides that a secured party may use collateral for the purpose of preserving same and that the provisions of Section 818.04, Florida Statutes, F.S.A., cited by appellant only applies where the pledgee converts the collateral to his own use. Bryant in addition urges that under the facts here considered, it is undisputed that the Bank held a number of powers of attorney signed by him authorizing it to dispose of the collateral held by it when necessary, and such instruments exempted the Bank from liability under Section 818.04.
We will not further belabor the arguments of the parties with respect to appellant's first point. As observed at the outset, the Uniform Commercial Code, like a politician's declaration from the stump, contains "something for everyone." We do not hold that the Bank had any specific duty to sell or otherwise dispose of the worthless warrants, or to furnish Bryant with a list of collateral held by it.[7] We do hold that, under the overall facts tendered to the jury, a justiciable issue was presented as to whether the Bank exercised reasonable care as to the preservation of the subject collateral.
The Bank's second point is troublesome. It is uncontradicted that Bryant had knowledge of the expiration date of the subject warrants; that he had records in his own possession which by simple arithmetical addition and subtraction would have disclosed that 1,000 warrants were moldering in the Bank's vault and rapidly becoming worthless.[8] Bryant vehemently argues that the Uniform Commercial Code[9] imposes an absolute duty on the Bank, as the secured party, and that contributory negligence is not a defense available to it. This argument might well be valid in a case where an absolute duty on the part of the pledgee is proven. We have held that the provisions of the Uniform Commercial Code have not cast an absolute duty upon the Bank, but only aided the trial court and the parties in developing the standard of care consistent with the general principle of the law of negligence. The issue of contributory negligence was a proper question and the trial court was correct in submitting the cause to the jury. Upon proper instructions, the question of contributory negligence must be submitted for consideration by the jury where there is any genuine issue as to a material fact.[10] Here, the basic issue was whether the Bank should have advised Bryant of the 1,000 warrants which were reposing in its vault as time ticked away towards the transformation of same from paper of value to only the value of paper; and under these circumstances whether Bryant was precluded, by his knowledge or what he should have known, from asserting *194 negligence on the part of the Bank. We hold under the facts revealed by this record that the question of contributory negligence was properly submitted to the jury by the trial court.
The judgment is affirmed.
CARLTON, VASSAR B., Associate Judge, concurs.
JOHNSON, J., dissents.
JOHNSON, Judge (dissenting):
I cannot agree with the majority opinion in this case, and register my dissent with the following dissenting opinion:
A run down of the facts is necessary in order to get a true picture of the parts played by each party to this controversy.
In March 1965, the appellee borrowed from the appellant $63,000.00, and on June 7, the same year, he borrowed $70,091.61. Appellee executed and delivered to appellant his two promissory notes in said amounts to be borrowed. As security collateral for both loans, the appellee pledged a number of securities, principally common stocks. By agreement, the appellee made frequent changes in the collateral as a result of the appellee's trading on the stock exchange. When appellee wanted to sell one or more of the stocks, he would, usually by telephone, advise the appellant that he had sold certain of the collateral and that the appellant was to transfer the sold stock to the appellee's stockbroker in North Carolina. The appellant, pursuant to the practice between the appellee and his stockbroker and the appellant, would then make the transfer with a letter to the broker advising the broker that the said stocks were being transferred for the purpose of sale and that the said broker should send to the appellant a like amount of stock, as to value, or the cash proceeds from the sale of the stock. At no time did the appellant initiate a sale of any of the collateral nor advise the appellee as to any kind of stock. In fact, the appellee in November of 1966, wrote Mr. Wilson Carraway, President of appellant Bank, and advised him that appellee had authorized a Mr. Bulla to act as his agent in the exchange of the stock held by the appellant as collateral. Mr. Bulla was an officer of Merrill Lynch, Pierce, Fenner & Smith, Inc. stockbrokers.
Among the collateral held by appellant as security for the loans of appellee, there were warrants to purchase common stock of Sperry Rand Corporation. There were 5800 such warrants that had been held by appellant during the time in question, although all of said warrants had not been deposited with the appellant at the same time.
In August 1967, or the last of July 1967, appellee advised Mr. Carraway by telephone that he had sold 4800 Sperry Rand warrants and 1000 shares of stock of Sperry Rand Corporation, and instructed him to transmit the same to Merrill Lynch, Pierce, Fenner & Smith, Inc. Appellant transmitted the 4800 warrants of Sperry Rand. There is a conflict between the testimony of the appellee and of Mr. Carraway as to the instructions given by appellee. Appellee says that he intended to dispose of all his Sperry Rand warrants. He does not remember the exact conversation with Mr. Carraway (page 68 of the testimony) however, as to whether he told him to transmit 4800 warrants or all of his Sperry Rand warrants. Mr. Carraway testified that he was only instructed to transmit 4800 warrants to Mr. Bulla, the stockbroker with Merrill Lynch, etc. The instructions from appellee to Merrill Lynch, etc. on July 30, 1965, as shown by defendant's Exhibit #3 of the record, was that the broker was to receive from appellant 4800 Sperry Rand warrants. The appellee also testified, on cross-examination, that he had in his possession bought and sold slips from Merrill Lynch, etc. which showed that he had *195 bought 8200 Sperry Rand warrants during the time in question, and that he had sold 7200 warrants and that these slips were in the possession of the appellee during August and September 1967. In response to questions to appellee, the following questions and answers are important, to wit:
Mr. Parker on Cross-Examination of appellee:
"Q. Then on any of those dates if you had simply gotten out all these slips and added up the totals, you would have seen that Merrill Lynch had credited you with buying eighty-two hundred Sperry Rand warrants and selling only seventy-two hundred. Is that correct?
"A. Yes.
"Q. I take it you didn't do that. You didn't get these out and add them up?
"A. No, In fact, I don't know whether I did or not. I thought that I did.
"Q. You think you might have mis-added them or left one out?
"A. Or left one out. They span a period of years."
It is apparent that neither appellant nor the appellee was aware that the 1,000 warrants which were about to expire on September 15, 1967, were a part of the collateral held by the appellant.
In the Order of the trial court denying the appellant's motion for summary judgment, there is this statement by the court, to wit:
"5... . It is not under a duty to make investment decisions for the owner and even if it did not have the authority, absent the consent of the plaintiff, to cause the warrants to be sold, reasonable men might conclude that there was at least a duty to call to the attention of the plaintiff that it was holding securities which would become worthless if not sold or exercised by a day certain. If that had been done and the plaintiff failed to act or cooperate to preserve the value of the collateral then there would be no cause for him to complain of his loss. Collateral pledged to secure a debt is in the nature of a bailment. The rule with regard to the duty of a bailee is that he exercise ordinary care and diligence in safeguarding the bailor's property. `The test of the liability of a bailee for the loss of entrusted goods is whether the bailee exercised that degree of care toward the goods that a reasonably prudent person would bestow on his own goods.' 4 Fla.Jur. p. 185 (Bailments, Sec. 9). It has been held that the duty of a secured party to use reasonable care in the `preservation' of collateral in his possession, as provided in F.S. 679.207(1) [F.S.A.], includes the preservation of the value of the collateral. Reed v. Central National Bank of Alva, 10 CCA-1970, 421 F.2d 113; Grace v. Sterling, Grace & Co., et al, 30 App.Div.2d 61, [289] N.Y.S.2d 632. On the other hand reasonable men may conclude that under the circumstances the bank was justified in assuming that plaintiff was fully aware of the status of the warrants and would make his own decisions as to whether he would sell or convert them before they expired and that he would protect his own interest without advise or information from it." (Emphasis supplied.)
I think the trial court was correct in denying the motion for summary judgment at that stage of the proceedings. When the trial court held that the Bank was not under a duty to make "investment decisions", it very fairly established the law of this case. It is apparent from viewing the total circumstances of this case, that if the appellant Bank did anything with the warrants, *196 other than to advise the appellee that the same were about to expire, it would have been making an "investment decision". There are many reasons why this is true. The appellee had a right to exchange the warrants for common stock at any minute up to the time of day on the 15th of September, 1967 when the stock exchange closed or at the close of business of Warrant Agent as provided in said warrants. Under the practice indulged in between the parties hereto during the length of the loans in question, the appellant would have placed itself under liability to the appellee if it had made a decision to sell the warrants when the appellee would rather have exchanged the same for stock of Sperry Rand Corporation. At what time between the date of August 11, 1967, the date the 4800 warrants were sold by the appellee, and the close of business on September 15, 1967, should the appellant have sold the warrants or exchanged them for stock? These are questions that highlight the fact that because of the practice of the appellee substituting collateral at will, the provisions of F.S. § 679.207, F.S.A. are not controlling. The appellant was in physical possession of the collateral but such possession was not unconditionally sole possession. Appellee was constructively in possession to the extent that he could trade the collateral without first getting the consent of appellant.
At the close of the testimony, the appellee made a motion for a directed verdict, which I think was rightfully denied.
The appellant, defendant below, also renewed its motion for a directed verdict, which was denied.
At this stage of the proceedings to deny the motion for a directed verdict was proper. The reason that I use the language, "at this stage of the proceedings", is that the trial court in its instructions to the jury should have narrowed the issue of negligence on the part of appellant to that as set out in section 5 of the Order denying motion for summary judgment, supra.
The testimony of both parties had established the fact that to do more than notify the appellee of the impending expiration of the warrants would be to indulge in making investment decisions on the part of the appellant. Failure to so instruct the jury in my opinion is substantive error.
The trial court did give a general instruction on negligence, but did not instruct the jury that the issue of negligence on the part of appellant had been narrowed to the question of whether the appellant was negligent in not calling or otherwise making the appellee aware of the impending surrender or exchange date of the warrants. The instruction as so given was in error in that it had the effect of confusing the jury. To further, in effect, confuse the jury, the court read to them a part of F.S. § 679.207, F.S.A., particularly that the secured party must use reasonable care in the custody and preservation of collateral in his possession; also, to the point which provided that a secured party may use or operate the collateral for the purpose of preserving the collateral or its value, whereas, under the ruling enunciated in said section 5 of the Order denying summary judgment, supra, the latter portion of the instruction, to wit: that the secured party may use or operate, etc., does not apply to the facts in this case. In the case sub judice the facts testified to by the appellee abundantly establish the fact that this case falls within the provisions of F.S. § 679.207, F.S.A. wherein the phrase "unless otherwise agreed" is used. It is apparent that the appellee exercised control of the collateral, without objection from appellant, during the entire life of this transaction with the Bank.
In view of the erroneous or confusing instructions to the jury, and from a review of the testimony of the parties, I am of the opinion that the appellant's motion for a new trial should have been granted, the trial court had properly instructed the jury that "if it appears from all the evidence submitted to you that the plaintiff's own negligence caused or contributed to causing *197 his loss, then you would find for the defendant," and it is apparent that the verdict of the jury was contrary to the evidence as same relates to the knowledge of appellee or the knowledge he had had of the conditions of the collateral, where it was, and when it was to become worthless.
The cases of Grace v. Sterling, Grace and Company, et al.[1] and Reed v. Central National Bank of Alva[2] are so varied from the facts of the case sub judice, that they are not authority for the contention of appellee.
The fact that the appellant Bank had in its possession signed Powers of Attorney from the appellee, is immaterial as to what authority the Bank had in selling the warrants or exchanging them. This is standard practice with all banks which take stock as collateral for loans. What was controlling was the implied agreement between the parties as to the possession by appellant, but control by the appellee.
Because of the apparent agreement, implied or expressed, between the appellant and appellee, the Uniform Commercial Code is of little value to either party. The contention of appellee in his brief is that contributory negligence is not a defense when the statute imposes liability, as is done in F.S. § 679.207, F.S.A., and cites several cases in support thereof. These cases hinge upon the fact that the statute is designed to protect a definite class of persons from a hazard which they, themselves, are incapable of avoiding. No such class of persons are involved in this case. What was done was by competent parties, with wide open eyes. The negligence alleged by each party in their pleadings, as well as in their evidence, appears to be contributory to both. Nevertheless, this question is one which should be decided by the jury, after proper instructions to the jury by the trial court in accord with guidelines set forth herein in this opinion.
For the above reasons, I dissent.
NOTES
[1] By stipulation of the parties, the subject warrants had a market value of $15,250.00.
[2] Florida Statutes, Chapters 671-680, F.S.A.
[3] Grace v. Sterling, Grace and Company, 30 A.D.2d 61, 289 N.Y.S.2d 632 (1968).
[4] Section 818.04, Florida Statutes, F.S.A., which prohibits the sale of collateral prior to debt being due without pledgor's consent.
[5] Section 679.311, Florida Statutes, F.S.A.:

"The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment, or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."
This Section basically follows the previously existing law and its purpose, as stated in the Uniform Commercial Code Comment, is:
"To make clear that in all security transactions under this Article, the debtor has an interest (whether legal title or an equity) which he can dispose of and which his creditors can reach." Uniform Commercial Code Comment, Ch. 679, § 679.311, F.S.A.
[6] Section 679.207, Florida Statutes, F.S.A.:

"679.207 Rights and duties when collateral is in secured party's possession. 
"(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.
"(2) Unless otherwise agreed, when collateral is in the secured party's possession:
"(a) Reasonable expenses (including the cost of any insurance and payment of taxes or other charges) incurred in the custody, preservation, use or operation of the collateral are chargeable to the debtor and are secured by the collateral;
"(b) The risk of accidental loss or damage is on the debtor to the extent of any deficiency in any effective insurance coverage;
"(c) The secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation;
"(d) The secured party must keep the collateral identifiable but fungible collateral may be commingled;
"(e) The secured party may repledge the collateral upon terms which do not impair the debtor's right to redeem it.
"(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest.
"(4) A secured party may use or operate the collateral for the purpose of preserving the collateral or its value or pursuant to the order of a court of appropriate jurisdiction or, except in the case of consumer goods, in the manner and to the extent provided in the security agreement."
[7] Section 679.208, Florida Statutes, F.S.A.
[8] Bryant testified:

"Q. And you had in your possession the sales slips to show that you had bought eighty-two hundred and sold only seventy-two hundred?
"A. Yes, sir."
[9] Section 679.207(3), Florida Statutes, F.S.A.
[10] Night Racing Ass'n, Inc. v. Green, 71 So.2d 500 (Fla. 1954); Beikirch v. City of Jacksonville Beach, 159 So.2d 898 (1 Fla.App. 1964); and Lopez v. Deatrick Leasing Corporation, 237 So.2d 284 (3 Fla.App. 1970).
[1] Grace v. Sterling Grace and Company, et al, 30 A.D.2d 61, 289 N.Y.S.2d 632 (1968).
[2] Reed v. Central National Bank of Alva, 421 F.2d 113 (10th Cir.1970).